OPINION OF THE COURT
 

 Bellacosa, J.
 

 The overriding issue on this appeal is whether plaintiff, Professor James Maas, may assert a plenary breach of contract
 
 *90
 
 action against defendant Cornell University, his employer. The lawsuit is premised on the University’s alleged failure to follow the procedures it had promulgated and used for the resolution of sexual harassment claims brought by four students against their teacher, Maas. We agree with the courts below that the action does not lie, and that Maas is not otherwise entitled to any judicial relief
 
 (see also, Matter of Stoll v New York State Coll. of Veterinary Medicine,
 
 94 NY2d 162 [decided today]).
 

 I.
 

 Maas is a tenured psychology professor in Cornell University’s College of Arts and Sciences. In 1994, four students filed sexual harassment accusations against him. The complaints were processed and reviewed under internal, departmental University protocols, prescribed and approved in 1991 by the College of Arts and Sciences faculty; the ordinances were entitled “Procedures to Handle Accusations of Sexual Harassment Against Faculty Members of Cornell University’s College of Arts and Sciences.”
 

 Following an investigative finding of merit by the College’s Senior Sexual Harassment Counselor, the Professional Ethics Committee held five days of hearings. It then found unanimously that Maas had repeatedly behaved unprofessionally and inappropriately in his relationships with the complainants, and that his behavior constituted sexual harassment. The Committee recommendations included conditions on this professor’s conduct in relation to students, and consideration for a five-year period of the finding of sexual harassment in determining any pay increases, promotions, honors and assignments. The Dean of the College upheld the Committee’s determination. An administrative appeal by Maas to the Provost was rejected; he remains a tenured member of the College faculty.
 

 Maas then sued Cornell, alleging eight causes of action, including unlawful adoption of procedures, breach of contract for failure to observe bylaws and procedures, and negligence. The University moved to dismiss all causes of action and, alternatively, to convert the action into a CPLR article 78 review proceeding. Maas opposed the procedural conversion and maintained that he had viable grounds to pursue the breach of contract action.
 

 Supreme Court granted Cornell’s motion. It dismissed all but the two negligence causes of action. The court stated that
 
 *91
 
 none of the allegations in the complaint specifies the terms of the asserted contract between Maas and Cornell which Maas claims were violated. The court also refused to convert the action to a CPLR article 78 proceeding. The Appellate Division unanimously affirmed. It concluded that, liberally construing the complaint, the pleading fails to allege a specific agreement that the University purportedly breached. The court was unpersuaded that the procedures contained in the University’s Campus Code and the College’s regulations evolved into terms of an implied contract between Maas and the University. The Appellate Division did not address Maas’ request for article 78 conversion at that stage of the litigation. Upon remittal, when the remaining portions of the case were again before Supreme Court, it granted Cornell’s successor summary judgment motion with respect to the remaining negligence causes of action. By dismissing these claims, Supreme Court put the entire matter out of court.
 

 On a second appeal by Maas, the Appellate Division again unanimously affirmed. With respect to his turnabout argument for procedural conversion of the action into a CPLR article 78 proceeding, the court concluded that Maas “[hjaving obviously made a tactical decision to pursue his eight causes of action in a plenary action and having succeeded on his prior objection to conversion, [he] may not now, owing to changed interests since all claims in this action have been dismissed * * * assume a contrary position” (253 AD2d 1, 5 [citations omitted]). This Court granted Maas leave to appeal, and we now affirm in all respects.
 

 II.
 

 The principal substantive thrust by Maas is that the University’s regulations and procedures create a contractual relationship with him. He theorizes, therefore, that any alleged violation of these procedures may form the basis for his breach of contract action against the University. He is wrong.
 

 In preliminarily assessing this controversy, the facts pleaded in the complaint must be taken as true and are accorded every favorable inference — only for purposes of deciding this procedural staging of the controversy
 
 (see, e.g., 219 Broadway Corp. v Alexander’s, Inc.,
 
 46 NY2d 506, 509). However, “allegations consisting of bare legal conclusions as well as factual claims flatly contradicted by documentary evidence are not entitled to any such consideration,” nor to that arguendo advantage
 
 (Gertler v Goodgold,
 
 107 AD2d 481, 485,
 
 affd for reasons stated below
 
 66 NY2d 946).
 

 
 *92
 
 A.
 

 The complaint by Maas premises his contract action on the view that Cornell breached his contractual rights as a tenured professor. Without reference to any express contractual source, Maas contends that the University’s administrative procedures form the basis for implying an agreement between them, which Cornell breached by failing to follow its own procedures. In assessing this employment relationship between the academic institution and its faculty member, we are satisfied that the University’s adherence to its own internal procedures does not qualify for judicial cognizance.
 

 This Court’s case law reflects the policy that the administrative decisions of educational institutions involve the exercise of highly specialized professional judgment and these institutions are, for the most part, better suited to make relatively final decisions concerning wholly internal matters
 
 (see, e.g., Matter of Olsson v Board of Higher Educ.,
 
 49 NY2d 408, 413 [cautioning that courts should “exercise!) the utmost restraint in applying traditional legal rules to disputes within the academic community”]). This jurisprudential guidepost stems from the belief that these institutions are “peculiarly capable of making the decisions which are appropriate and necessary to their continued existence”
 
 (Gertler v Goodgold,
 
 107 AD2d 481, 485,
 
 affd for reasons stated below
 
 66 NY2d 946,
 
 supra).
 

 Courts retain a “restricted role” in dealing with and reviewing controversies involving colleges and universities
 
 (Gertler v Goodgold, supra,
 
 at 487;
 
 see also, Klinge v Ithaca Coll.,
 
 244 AD2d 611, 613). “In these so-called ‘university’ cases, CPLR article 78 proceedings are the appropriate vehicle because they ensure that the over-all integrity of the educational institution is maintained and, therefore, protect more than just the individual’s right to employment”
 
 (Klinge v Ithaca Coll., supra,
 
 at 613). Thus, a CPLR article 78 proceeding is the route for judicial review of such matters, not a plenary action. Notably, when litigants fail to avail themselves of the CPLR article 78 avenue, courts may justifiably dismiss plenary claims premised upon alleged failures to follow applicable principles set forth in employee handbooks
 
 (see, Holm v Ithaca Coll.,
 
 256 AD2d 986, 988,
 
 Iv denied
 
 93 NY2d 804).
 

 Maas may have been entitled to CPLR article 78 review. Ironically, he initially resisted that very relief sought by defendant Cornell in the trial court. In his latest twist, he asserts that the lower courts erred in refusing to convert his plenary
 
 *93
 
 action into a CPLR article 78 proceeding. His effort in this regard comes too late and the relief is now unavailable for the reasons given by the Appellate Division, and as noted above in the litigation description of this case
 
 (see,
 
 253 AD2d 1,
 
 supra; see also, Matter of Martin v C. A. Prods. Co.,
 
 8 NY2d 226, 231).
 

 B.
 

 Because we agree that Maas cannot now seek to convert his action to a CPLR article 78 review proceeding, we must address his strained effort to avoid dismissal of his breach of contract action. To the extent his arguments may be construed as urging that an implied-in-fact agreement may be extracted out of the procedures contained in the Campus Code, as well as in the College of Arts and Sciences regulations, his theory fails.
 

 Instructively, this Court affirmed the dismissal of a complaint which alleged a breach of contract action based on a university’s unfair administrative conduct
 
 (see, Gertler v Good-gold,
 
 107 AD2d 481,
 
 affd for reasons stated below
 
 66 NY2d 946,
 
 supra).
 
 When a complaint merely “recites a litany of academic and administrative grievances couched in terms of a violation of a contractual right to tenure” and is devoid of any reference to the contractual basis for the rights asserted, academic prerogatives should not be channeled into a cognizable contract action classification
 
 (id.,
 
 at 484).
 

 Moreover, Cornell cannot be held to have contractually bound itself to follow these internal rules when it hired Maas. In the analogous context of wrongful termination disputes, this Court has held that an employee’s action against an employer based on its written policies may not be maintained unless the employer “made the employee aware of its express written policy * * * and that employee detrimentally relied on that policy in accepting the employment”
 
 (Matter of De Petris v Union Settlement Assn.,
 
 86 NY2d 406, 410;
 
 see also, Weiner v McGraw-Hill, Inc.,
 
 57 NY2d 458, 464-466). None of these prerequisites is present or operative in the relationship at issue in this case.
 

 We discern additional support in Restatement (Second) of Contracts § 4. It provides that “[a] promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct.” An implied-in-fact contract would arise from a mutual agreement and an “intent to promise, when the agreement and promise have simply not been expressed in words” (1 Williston, Contracts § 1:5, at 20 [4th ed 1990]). This type of
 
 *94
 
 contract still requires such elements as consideration, mutual assent, legal capacity and legal subject matter
 
 (id.,
 
 at 22). A “Manifestation of mutual assent to an exchange requires that each party either make a promise or begin or render a performance” (Restatement [Second] of Contracts § 18). The conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent
 
 (id.,
 
 § 19). Thus, a promise may be implied when a court may justifiably infer that the promise would have been explicitly made, had attention been drawn to it
 
 (see, Genet v President of Del. & Hudson Canal Co.,
 
 136 NY 593, 609). While handbooks generally contain information concerning rights and responsibilities, “the concept of handbooks as part of a contract with commitments and expectations on both sides” is not universally accepted (Mawdsley,
 
 Litigation Involving Higher Education Employee and Student Handbooks,
 
 109 Ed Law Rep 1031, 1049). Thus, under these guidelines, we are not persuaded that any basis has been presented to support an attributed assent to the University that the Campus Code was to be deemed a part of the employment contract with Maas.
 

 With this backdrop, Maas has failed to plead a cognizable breach of contract action. The University nowhere reflected an intent that the provisions of its Code would become terms of a discrete, implied-in-fact agreement, for purposes such as are alleged in this lawsuit. The Code itself is heavily informational in nature and does not express or support the implication of any promise on the part of the University. While the Code and its attendant regulations promulgate the University’s sexual harassment policy and provide procedures for dealing with sexual harassment claims, Maas’ essential employment duties and rights are only indirectly affected by these provisions. Finally, in this regard, Cornell’s handbook clearly states that it can be altered at any time (impliedly unilaterally), and cautions readers and affected persons to seek out the most updated edition. That feature is hardly the harbinger of a legally binding set of arrangements. We conclude, therefore, that there is no support in this record or in relevant authority sources to sustain Maas’ implied contract cause.
 

 Maas also relies on
 
 Tedeschi v Wagner Coll.
 
 (49 NY2d 652) to support his theory. He misconstrues that ruling, as it might even possibly apply here.
 

 In the context of the relationship between a university and a student, this Court in
 
 Tedeschi
 
 held that “when a university
 
 *95
 
 has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed”
 
 {id.,
 
 at 660). We explicitly cautioned that the legal theory upon which this rule emerges is, however, not well defined, and that the “[c]ontract theory is not wholly satisfactory”
 
 {id.,
 
 at 658, 659-660). Further, we concluded that “[s]o much of the complaint as sought money damages and the right to a due process hearing based on claimed ‘state action’ was properly dismissed”
 
 {id.,
 
 at 661-662). Therefore,
 
 Tedeschi
 
 provides no support for Maas’ claim under the alleged breach of contract theory.
 

 The Court has considered all other arguments, and concludes that they are likewise without merit. This case was correctly decided by both courts below, and we affirm.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Rosenblatt concur; Judge Wesley taking no part.
 

 Order affirmed, with costs.