Carolyn M. **BYERLY**, Plaintiff,

v.

**ITHACA COLLEGE**, Defendant.

No. 5:01–CV–1939FJS/GJD.

United States District Court,
N.D. New York.

Nov. 10, 2003.

---

Law Offices of Jonathan C. Moore, New York City (Jonathan C. Moore), for Plaintiff.

Bond, Schoeneck & King, PLLC, Syracuse, NY (Joseph C. Dole, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiff Carolyn Byerly commenced this action against Defendant Ithaca College on December 20, 2001, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the New York State Human Rights Law, N.Y. Exec. Law § 296. She also complains of sexual orientation discrimination and retaliation in violation of the Tompkins County Fair Practice Statute, Local Law No. 6 of 1991. Specifically, Plaintiff alleges that she was unlawfully denied tenure as an Assistant Professor due to Defendant's sole reliance upon negative student comments, which she claims were biased against women and lesbians and therefore discriminatory.

### II. BACKGROUND

Defendant hired Plaintiff for a tenure track position as an Assistant Professor in its Department of Television–Radio, Park School of Communications, beginning on August 15, 1996. She was to be considered for tenure in 2000.

Plaintiff submitted her tenure application to the Department of Television–Radio Personnel Committee on September 1, 1999. On October 15, 1999, the Personnel Committee issued a report recommending tenure by a vote of 5–3. However, a minority report of the Personnel Committee recommended against tenure, citing negative comments retrieved from a single open-ended question on a student evaluation, which the minority felt showed Plaintiff's failure to meet effective teaching standards. Chair of the Department of Television–Radio, Dr. Megan Roberts, issued a report on November 2, 1999, recommending tenure on grounds of scholarship

and service but finding that conflicting information made it difficult to arrive at a determination on Plaintiff's teaching ability.

On November 19, 1999, Thomas Bohn, Dean of the Park School of Communications, issued a report to the All Faculty Tenure and Promotion Committee recommending against tenure. On January 26, 2000, the All Faculty Tenure and Promotion Committee issued a report recommending against tenure, citing Plaintiff's teaching ability as its chief concern.

Plaintiff then filed an appeal regarding the negative decision with the Faculty Appeals Committee on February 7, 2000, citing five procedural violations. The Faculty Appeals Committee reviewed three of the alleged violations and subsequently rejected all of them.

On April 9, 2000, Provost James Malek issued a memorandum recommending against tenure, and on May 15, 2000, Dr. Peggy Williams, President of Ithaca College, notified Plaintiff that she would not be awarded tenure.

Presently before the Court are Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 and Plaintiff's cross-motion to amend her complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.[1] The following constitutes the Court's written determination of the pending motions.

## III. DISCUSSION [2]

### A. Plaintiff's cross-motion to amend her complaint

■ Plaintiff moves to amend her complaint to add two state law claims sounding in breach of contract and breach of the implied covenant of good faith and fair dealing.[3] *See* Plaintiff's Notice of Motion; Proposed First Amended Complaint at ¶¶ 6, 78–81. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend " 'shall be freely given when justice so requires.' " *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)

---

1. Plaintiff proposes to amend her complaint to add two state law claims—breach of contract and breach of the implied covenant of good faith and fair dealing—and to change the date on which she filed her complaint with the Equal Employment Opportunity Commission ("EEOC") from March 19, 2001 to February 23, 2001.

2. As a preliminary matter, the Court notes that, throughout her papers, Plaintiff contends that dismissal is premature because there has been no discovery and, without discovery, there can be no determination as to the merits of her claims.

   Plaintiff essentially makes a Rule 56(f) motion. "Federal Rule of Civil Procedure 56(f) provides an opportunity to postpone consideration of [dismissal and] to obtain ... discovery by describing: (i) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts

were unsuccessful." *Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 167 (2d Cir.2003) (citation omitted). Plaintiff has failed to meet the necessary requirements to warrant relief under Rule 56(f). She fails to identify the material she would like to obtain if given the opportunity to obtain discovery, and, moreover, she fails to allege how that material would aid her in raising genuine issues of material fact. Thus, to the extent that Plaintiff's papers can be read to argue, in the alternative, that the Court should provide her with the opportunity to conduct discovery, rather than grant Defendant's motion for summary judgment, the Court denies her request.

3. Plaintiff also seeks to amend her complaint to change the EEOC filing date from March 19, 2001, as alleged in her original complaint, to February 23, 2001. The Court will address this proposed amendment *infra*.

(quotation omitted). However, a court may deny such a motion because of futility, undue delay, bad faith or prejudice to the opposing party. *See id.*

In the present case, Defendant opposes Plaintiff's motion to amend on the basis of futility.[4]

In determining whether a proposed claim would be futile, courts often evaluate such claims under a Rule 12(b)(6) standard. *See Sepulveda v. City of New York,* No. 01 CV 3117, 2003 WL 22052870, *2 (S.D.N.Y. Sept.2, 2003). In addressing a motion to dismiss under Rule 12(b)(6), a court must accept the plaintiff's well-pleaded allegations as true and liberally construe those facts in the light most favorable to the plaintiff. *See Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991). A court will dismiss a complaint under Rule 12(b)(6) "only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his legal claim which will entitle him to relief." *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 133 (N.D.N.Y.1990) (citation omitted). Accordingly, the Court will address Plaintiff's proposed amendments in light of this standard.

### 1. Plaintiff's proposed breach of contract claim

■ Although denominated as a breach of contract claim, Plaintiff's claim is based upon Defendant's failure to follow the principles and procedures outlined in the Faculty Handbook and department guidelines, which were allegedly incorporated into her employment contract. Essentially, Plaintiff is asserting that Defendant's failure to follow the procedures outlined in these documents constituted an abuse of discre-

tion. To grant Plaintiff leave to amend her complaint to add such a cause of action would be futile since it could not survive a Rule 12(b)(6) motion. *See Torre v. Columbia Univ.,* No. 97 Civ. 0981, 1998 WL 386438, *13 (S.D.N.Y. July 10, 1998) (holding that an Article 78 proceeding is appropriate when a denial of tenure results from arbitrary and capricious behavior or an abuse of discretion). More specifically, claims based upon the rights or procedures found in college manuals, bylaws and handbooks may only be reviewed by way of an Article 78 proceeding in New York State Supreme Court. *See Romer v. Bd. of Trustees of Hobart & William Smith Colls.,* 842 F.Supp. 703, 707 (W.D.N.Y. 1994); *Maas v. Cornell Univ.,* 94 N.Y.2d 87, 92–93, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999); *Klinge v. Ithaca Coll.,* 244 A.D.2d 611, 613, 663 N.Y.S.2d 735 (3rd Dep't 1997). Accordingly, the Court denies Plaintiff's cross-motion to amend her complaint to add a breach of contract claim as futile.

### 2. Plaintiff's breach of the implied covenant of good faith and fair dealing

■ Plaintiff's breach of the implied covenant of good faith and fair dealing claim requires little discussion. This claim is premised upon the same allegation as Plaintiff's breach of contract claim. *See* Proposed Amended Complaint at ¶¶ 79, 81. Moreover, as with Plaintiff's breach of contract claim, this claim is based upon the rights and procedures found in the Faculty handbook and department guidelines. Therefore, it is properly reviewable in an Article 78 proceeding.[5] Accordingly, the

---

4. A court may deny a motion to amend solely on the ground of futility. *See Jenkins v. Sea Land Service, Inc.,* Nos. 92 Civ. 2380, 1993 WL 322785, *2 ( S.D.N.Y. Aug. 19, 1993).

5. Moreover, New York law does not recognize a claim for breach of implied covenant of good faith and fair dealing when an identical claim for breach of contract is also pled. *See*

Court denies Plaintiff's cross-motion to amend her complaint to add a claim for breach of the implied covenant of good faith and fair dealing as futile.[6]

## B. Defendant's motion for judgment on the pleadings or, in the alternative, for summary judgment

■ As a preliminary matter, the Court will address whether Defendant's motion is a motion that may be converted into one for summary judgment. A court may convert a motion for judgment on the pleadings into one for summary judgment if " 'matters outside the pleadings are presented to and not excluded by the court, and ... all parties ... [are] given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' " *Gumowitz v. First Fed. Sav. & Loan Ass'n of Roanoke*, No. 90 CIV. 8083, 1992 WL 179832, *2 (S.D.N.Y. July 27, 1992) (quotation omitted).

Since the parties have relied upon matters outside of the pleadings (e.g. affidavits, handbooks and other documentary evidence), conversion is appropriate, and, therefore, the Court shall consider Defendant's motion as one for summary judgment.

A court should grant a motion for summary judgment only if "there is no genuine

issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)). Moreover, the court may grant a motion for summary judgment in the absence of discovery where it is clear that the plaintiff cannot prevail on any of her claims. *See Patton v. Gen. Signal Corp.*, 984 F.Supp. 666, 670 (W.D.N.Y.1997).

### 1. Plaintiff's Sex Discrimination and Retaliation Claims under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law [7]

Claims under both Title VII and the New York State Human Rights Law are analyzed under the same legal standard. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir.2000) (citations omitted). Therefore, the Court will address them simultaneously.

---

*ARI & Co., Inc. v. Regent Int'l Corp.*, 273 F.Supp.2d 518, 521–22 (S.D.N.Y.2003) (quotation and other citation omitted). Such a claim can survive a motion to dismiss only if it is based on allegations different than those asserted in the breach of contract claim. *See id.*

**6.** Since futility, standing alone, justifies denial of Plaintiff's cross-motion to amend her complaint to add her proposed state law claims, the Court need not address the issues of undue delay and bad faith.

**7.** Plaintiff seeks to amend her complaint to change her EEOC filing date from March 19,

2001, as alleged in her original complaint, to February 23, 2001. For purposes of this discussion, the Court will assume that Plaintiff filed her charge with the EEOC within the 300–day statute-of-limitations period and that, therefore, her Title VII claims are timely. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Under the New York Human Rights Law, Plaintiff has three years in which to bring her claims of discrimination. *See Patrowich v. Chemical Bank*, 98 A.D.2d 318, 324, 470 N.Y.S.2d 599 (1st Dep't 1984) (citation omitted). There is no dispute that her claims under this statute are timely.

### a. Plaintiff's sex discrimination claims

■ To state a *prima facie* case of gender discrimination under Title VII and the New York State Human Rights Law, a plaintiff must show (1) that she was a member of a protected group; (2) that she was qualified for the job in question; (3) that the defendant took an adverse employment action against her; and (4) that the circumstances support an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (footnote omitted); *McFadden v. State Univ. of N.Y., Coll. at Brockport,* 195 F.Supp.2d 436, 444 (W.D.N.Y.2002) (citations omitted). The plaintiff's burden at this stage is *de minimis. See Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002) (citation omitted).

Plaintiff alleges that the negative student comments were biased against women and that Defendant's sole reliance on these comments in its tenure determination constituted discrimination and ultimately infected the tenure process. *See* Plaintiff's Memorandum of Law at 10, 19. Moreover, Plaintiff states that these student comments, upon which Defendant relied, show outright bias and sexual stereotyping.[8] *See* Plaintiff's Memorandum of Law at 10.

There is no dispute that Plaintiff is a member of a protected group and that Defendant took an adverse employment action against her. However, Defendant contends that Plaintiff cannot establish the other two elements of her *prima facie* case. Although the Court has some doubt that Plaintiff can establish her *prima facie* case, because her burden at this stage is *de minimis,* the Court will assume, for purposes of discussion, that she has met this burden. The burden thus shifts to Defendant to come forward with a legitimate non-discriminatory reason for its decision. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

Defendant admits relying on the student comments in making its decision but asserts that these comments are facially neutral and that gender played no role in its decision to deny Plaintiff tenure. *See* Defendant's Memorandum of Law at 4, 18–19. Moreover, Defendant states that its decision to deny Plaintiff tenure was based upon her failure to attain standards of highly effective teaching—a non-discriminatory basis.[9] *See* Defendant's Reply Memorandum of Law at 9.

Since Defendant has come forward with a non-discriminatory reason for its decision, the burden then shifts back to Plaintiff, who "has the ultimate burden of persuading the trier of fact that unlawful discrimination was the real reason she was denied tenure." *McFadden,* 195 F.Supp.2d at 444 (citation omitted). To meet this burden, Plaintiff "must show that there exists a genuine issue of material fact concerning whether the decision

---

8. For example, she states that she was referred to as "cold and impersonal," which means "not warm and feminine," and "exacting in my expectations" meaning "not nurturing." *See* Affidavit of Carolyn Byerly, sworn to October 11, 2002 ("Byerly Aff."), at ¶ 36. In other words, she argues that the students were looking for a more traditionally feminine teacher and not one masculine in demeanor. *See id.*

9. Teaching effectiveness, as defined by the Department of Television–Radio, is judged using individual self-generated data submitted by the candidate addressing teaching style, course load and curriculum development, to name a few, as well as peer and student evaluations. *See* Plaintiff's Exhibit "3" at 2–3. All candidates for tenure must demonstrate high standards of effective teaching since it is the primary mission of Defendant. *See id.*

to deny her tenure was motivated by discrimination." *Id.* (citations omitted) "[She] can do so by presenting sufficient ... evidence from which a rational finder of fact could infer that more likely than not she was the victim of intentional discrimination." *Id.* at 445 (citing *Bickerstaff v. Vassar College*, 196 F.3d 435, 447–48 (2d Cir.1999), *cert. denied*, 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000)).

■ To support her claim, Plaintiff argues that Defendant discriminated against her by relying solely on the negative student comments, which Plaintiff asserts were gender based, to deny her tenure. A review of the comments in question, however, shows that they are gender-neutral on their face and describe personal traits and demeanor in gender-neutral terms.[10] Moreover, these comments suggest that there are significant differences in the way Plaintiff's students perceived her as a teacher. Some students found her to be a demanding but excellent teacher, while others found her to be overly critical and rude.[11]

Moreover, Plaintiff ignores the fact that her colleagues evaluated her as a mediocre candidate. For example, Plaintiff passed, but did not excel in, two out of the three evaluation criteria that Defendant set and did not pass the third.[12] *See* Byerly Aff. at Exhibit "8." She was regarded as a modest scholar with an adequate service record, *see id.* at 4–5, and many of her colleagues rated her as a below-average teacher. *See id.* at 8–9. Based upon this record, the Court concludes that Plaintiff's failure to achieve highly effective teaching, coupled with her average or below-average accomplishments in the other areas of evaluation, support the conclusion that Defendant's decision to deny her tenure was based upon legitimate, non-discriminatory reasons.

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's claims of gender discrimination under Title VII and the New York State Human Rights Law.

### b. *Plaintiff's Retaliation Claims*

Plaintiff alleges that Defendant denied her tenure in retaliation for advocating for greater sexual and racial diversity in the workplace. *See* Complaint at ¶¶ 55, 59. Specifically, she asserts that Defendant's hiring practice was discriminatory and that she hoped to redefine the process through her work on the hiring committee. *See* Byerly Aff. at ¶ 59(a). Moreover, she alleges that her involvement with the committee in recruiting two minority profes-

---

**10.** For example, "condescending" and "intimidating" are terms that cross gender lines. They do not portray sexual stereotyping or gender bias. *See,* e.g., Affidavit of Megan Roberts, sworn to May 6, 2002, ("Roberts Aff.") at Exhibit "A," p. 16 no. 8 ("There were many times when I felt intimidated to ask questions or address her w/ problems in my writing...".); *see id.* at p. 22 no. 11 ("I would like to state that having Professor Byerly in my last semester was a nerve-racking & degrading experience. Each time I have had her as a professor she had treated me like a no-talent hack & has been condescending."); *see id.* at p. 22 no. 3 ("I felt several times throughout this course that the way Byerly

spoke to students was unnecessarily condescending and insulting.").

**11.** "She is often close-minded and rude." *See* Roberts Aff. at p. 33 no. 10. "She is totally unapproachable, overcritical, biased and overdemanding." *See id.* at p. 9 no. 7. "The course was very helpful, but also overly stressful I feel that a lot of work was required." *See id.* at p. 7 no. 12. "This class demanded a lot work, which I benefitted from." *See id.* at p. 8 no. 8.

**12.** The criteria for evaluation, as set out in the Faculty Handbook, are service, scholarship, and teaching ability.

sors right before her tenure evaluation sparked the retaliation. *See* Plaintiff's Memorandum of Law at 5.

■ To state a *prima facie* case of retaliation under Title VII and the New York State Human Rights Law, a plaintiff must allege (1) that she was engaged in a protected activity; (2) that her employer was aware of her participation; (3) that the defendant took an adverse employment action against her; and (4) that a causal connection exists between the protected activity and the adverse employment action. *See Raniola v. Bratton,* 243 F.3d 610, 624 (2d Cir.2001) (quotation omitted); *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997) (citations omitted).

■ Plaintiff's retaliation clam falters on the first prong of her *prima facie* case because she cannot show that she was engaged in a protected activity. Protected activity has been defined as any activity that opposes the unlawful employment practices of Title VII. *See* 42 U.S.C. § 2000e–3(a). Such practices include, for example, an employer's failure or refusal to hire, or to discharge or otherwise discriminate against any individual because of his/her race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e–2(a)(1). An employer's failure to follow an affirmative action policy, however, does not constitute an unlawful practice. *See Manoharan v. Columbia Univ. Coll. of Phys. & Surgeons,* 842 F.2d 590, 594 (2d Cir.1988).

To support her claim that she was engaged in a protected activity, Plaintiff merely alleges that while serving on a campus committee she advocated for the hiring of two minority candidates. Even if true, under *Manoharan,* such conclusory allegations are insufficient to show that she was involved in opposing an unlawful employment practice.[13]

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's retaliation claims under Title VII and the New York State Human Rights Law.[14]

**2. Plaintiff's claims of sexual orientation discrimination and retaliation under the Tompkins County Fair Practice Statute, Local Law No. 6 of 1991.[15]**

Plaintiff alleges that Defendant discriminated against her based upon her sexual orientation when it refused to accept her application for tenure and that Defendant retaliated against her for advocating for a more diverse workplace, thus violating the Tompkins County Fair Practice Statute. *See* Complaint at ¶¶ 49, 63.

The Tompkins County Fair Practice Statute provides redress for discrimination based upon sexual orientation and retaliation. *See* Tompkins County Fair Practice

**13.** Furthermore, Plaintiff fails to offer any evidence that Defendant's hiring process was rife with discrimination. In fact, in 1998, Defendant hired an African–American professor for whom Plaintiff advocated. *See* Plaintiff's Memorandum of Law at 5; Defendant's Memorandum of Law at 6. Moreover, although she alleges that the dean-dominated search only produced six white male candidates, she does not state ways in which she found this process to be discriminatory or that she had reason to believe that Defendant's actions violated the law. Merely alleging that white male candidates were chosen to interview with Defendant is not proof of a discriminatory selection process. *See Manoharan,* 842 F.2d at 594.

**14.** Since the Court concludes that Plaintiff has failed to demonstrate that she was engaged in a protected activity, it need not address the other elements of her *prima facie* case.

**15.** The Court will exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), and review Plaintiff's claims of sexual orientation discrimination and retaliation under the Tompkins County Fair Practice Statute, Local Law No. 6 of 1991.

Statute, Local Law No. 6 of 1991, at § I. The applicable statute of limitations for claims brought pursuant to this statute is one year from the alleged unlawful discriminatory act. *See id.* at § V(h)(4). This limitations period is tolled, however, if the complainant attempts conciliation with the Tompkins County Human Rights Commission, in which case the complainant has one year from the unsuccessful termination of the conciliation to commence her action. *See id.* at § V(j).

Defendant argues that Plaintiff's claims under this statute are time-barred because she did not commence the present action within the one-year statute-of-limitations period and she did not file her claims with the Tompkins County Human Rights Commission so as to benefit from the statute's tolling provision. *See* Defendant's Memorandum of Law at 4.

■ Plaintiff concedes that she did not file a claim with the Tompkins County Human Rights Commission so as to toll the one-year statute of limitations. Nonetheless, she argues that her filing of a charge with the EEOC should serve as the equivalent. *See* Plaintiff's Memorandum of Law at 25 n. 10. To support this claim, she asserts that both the Commission and the EEOC serve the same purpose and that they "presumably [have] a work sharing agreement." *See id.* However, Plaintiff cites no authority for this proposition, and the Tompkins County Fair Practice Statute does not provide that filing a claim with the EEOC serves as the equivalent to filing a claim with the Tompkins County Human Rights Commission.

Plaintiff filed her complaint on December 20, 2001, approximately nineteen months after Defendant notified her of its decision to deny her tenure. *See* Complaint at ¶ 47. Since Plaintiff failed to attempt conciliation with the Tompkins County Human Rights Commission, she cannot benefit from the statute's tolling provision and, therefore, her claims under the Tompkins County Fair Practice Statute are time-barred.

Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's claims under the Tompkins County Fair Practice Statute.[16]

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiff's cross-motion to amend her complaint is **DENIED** with respect to her claims for breach of contract and breach of the implied covenant of good faith and fair dealing; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court enter judgement in favor of Defendant and close this case.

**IT IS SO ORDERED.**

---

16. Plaintiff's complaint states claims under "[T]he Tompkins County Fair Practice Statute, Tompkins County Local Law No. 6 of 1991 Administrative Code of the City of New York." *See* Complaint at ¶¶ 61, 63. The complaint makes no mention of any conduct that occurred in New York City. *See* Complaint at ¶¶ 61, 63. Plaintiff refers to The Tompkins County Law, absent the "Administrative Code of the City of New York" segment, at all other times in the complaint and in her memorandum of law. Therefore, Defendant's assumption that this segment is a typographical error may be correct. In any event, since none of the conduct occurred in New York City, Plaintiff could not state a claim under the Administrative Code of the City of New York. *See* Defendant's Memorandum of Law at 4 n. 3.