**Joyce BICKERSTAFF, Plaintiff**

v.

**VASSAR COLLEGE, Norman Fainstein, Barbara Page, Defendants**

No. 00 CIV. 7479(SCR).

United States District Court, S.D. New York.

Dec. 10, 2004.

Eleanor Jackson Piel, New York, NY, for Plaintiff.

James P. Drohan, Donoghue, Thomas, Auslander & Drohan, Hopewell Junction, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. Background

#### A. Procedural Posture

Joyce Bickerstaff (the "Plaintiff") brought suit against Vassar College ("Vassar"), Norman Fainstein ("Dean Fainstein"), Dean of the Faculty of Vassar College, and Barbara Page, ("Dean Page") Acting Dean of the Faculty of Vassar College (Vassar, Dean Fainstein, and Dean Page are collectively reflected to herein as the "Defendants") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–3 et seq., alleging claims of retaliation and hostile work environment, and seeking damages under 42 U.S.C. § 1981. Plaintiff also claims that Defendants violated the New York Human Rights Law ("HRL"), Exec. Law § 296(6),(7).

The Defendants request summary judgment contending that (1) there exists no material, triable issue of fact with regard to the Plaintiff's claims of retaliation; (2) the New York State Law claim that Vassar did not follow its own rules in dealing with the Plaintiff's intra-collegiate harassment complaint should be dismissed as the statute of limitations has expired; (3) any alleged events of retaliation or discrimination occurring prior to May 30, 1999 are time barred; (4) there exists no material triable issue of fact as to the existence of a hostile environment based upon race; (5) the Plaintiff lacks standing to assert injury to Professor Mamiya or the Africana Studies Program as a basis for her Title VII

Claim; (6) the Plaintiff's salary claim is not properly before the court because it is barred by res judicata; (7) there exists no triable issue of fact regarding individual liability under the HRL against Dean Fainstein and Dean Page.

## B. Statement of Facts

Vassar is a private educational institution located in Poughkeepsie, New York. Dean Fainstein was the Dean of Faculty from 1995–2000 and Dean Page was the Acting Dean during the first semester of the 2000–2001 academic year. Frances Ferguson ("President Ferguson") was the President of Vassar during the times relevant to this case.

The Plaintiff, an African–American female, was hired by Vassar in 1971 on a joint appointment between the Department of Education and the Program in Black Studies (now, Africana Studies). In 1979, the Plaintiff was promoted to the rank of Associate Professor with tenure. She is one of the founders of the Africana Studies Program, serving as its chair during the years 1982, 1985–1989 and 1992–1994, and during the Spring term of 2000.

In 1989, and again in 1994, the Plaintiff sought promotion from associate to full professor, but was denied on both occasions. In July 1995, the Plaintiff filed a claim alleging discrimination on the basis of race and gender and, in November 1996, she subsequently filed an Equal Pay Act

claim and a retaliation claim. The District Court dismissed all claims and the Second Circuit affirmed the dismissal. *See* 992 F.Supp. 372 (S.D.N.Y.1998); 196 F.3d 435 (2d Cir.1999) ("Bickerstaff I"). Since the filing of *Bickerstaff I*, the Plaintiff has continued as a tenured associate professor at Vassar, receiving salary increases from time to time.

On March 30, 2000, the Plaintiff filed a complaint with the EEOC alleging discriminatory treatment in retaliation for her previous EEOC complaint and subsequent lawsuit. The Plaintiff filed her first complaint in this action on October 4, 2000. The Plaintiff has alleged a long list of specific acts of retaliation, which includes: (1) negative statements by Dean Fainstein about the Plaintiff's first lawsuit at faculty meetings on December 18, 1998 and at a later meeting on June 22, 1999; (2) taking away what the Plaintiff describes as "academic leadership prerogatives" that she claims to be entitled to under the Governance and Bylaws of Vassar college by refusing to allow her to participate in decisions to hire her colleagues; (3) granting her minimal wage increases; (4) refusing to mediate a harassment complaint filed by the Plaintiff on March 24, 2000; (5) allowing her office to be crowded with storage and infected with mold, and denying her a printer; (6) excluding the Plaintiff from social functions including a dinner party at President Ferguson's house.[1]

---

1. Plaintiff has, at various points in this litigation, also alleged acts of retaliation taken against the Africana Studies Program and her colleague and ally Professor Mamiya. These include refusing to allocate resources to the Africana Studies Program while she was its chair, criticizing faculty who participated in a student rally protesting the administration's policies towards the Africana Studies Program, and requesting the resignation of Professor Mamiya as chairman of the Africana Studies Program. Plaintiff does not have standing to assert these or similar claims and, in any event, has not reasserted them during

or after oral argument, when she submitted a final list of what she considered to be her actionable claims to the court. Moreover, it is interesting to note that it is far from clear that most members of the Africana Studies Program would want her representing their interests. For whatever reason, the Plaintiff felt the need to open a November 14, 2000 meeting of the Program's Steering Committee by informing all members that she was engaged in a lawsuit against the College, and that any actions they took would be part of her suit for harassment and retaliation.

## II. Analysis

### A. Background

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact[.]" FED. R. CIV. P. 56(c). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*

### B. Retaliation Claims

The *McDonnell–Douglas* burden shifting analysis for employment discrimination cases applies to retaliation claims under Title VII. *See Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir.2001).[2] First, the Plaintiff must establish a prima facie case of retaliation by showing that (a) she was engaged in a protected activity under Title VII; (b) the employer was aware of the Plaintiff's participation in the protected activity; (c) the Plaintiff was subjected to an adverse employment action; and (d) there is a nexus between the protected activity and the adverse employment action. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, (2d Cir.1997). The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Slattery*, 248 F.3d at 94. If the Defendants meet this burden,

the Plaintiff has the opportunity to prove that the proffered reasons are a pretext for retaliatory action. *Id.* The court finds that each alleged retaliatory action either does not constitute a legally cognizable adverse employment action, has been explained by some nondiscriminatory reason that has not been rebutted by the Plaintiff, or both.[3]

In order to be considered "materially adverse," a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001). Examples of adverse employment actions include termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *See id.*

Negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.' *See Brennan v. City of White Plains*, 67 F.Supp.2d 362, 374 (S.D.N.Y.1999) ("While verbal abuse might at times be sufficiently severe and chronic to constitute an adverse employment action, such behavior, without more, hardly rises to the level of actionable retaliation.").

Small salary increases are, by definition, not reductions in wages, and are not adverse actions for purposes of Title VII. *See Staff v. Pall Corp.*, 233 F.Supp.2d 516,

---

**2.** Claims under § 1981 are analyzed under the same framework as claims brought pursuant to Title VII. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997). And New York courts apply similar standards as those applied by Federal courts in assessing discrimination and retaliation claims brought pursuant to the New York Human Rights Law. *See, e.g., Smith v. Xerox Corp.*, 196 F.3d 358, 363 n. 1 (2d Cir.1999) ("claims under the NYSHRL are analyzed identically to claims

under ... Title VII, [and consequently] the outcome of an employment discrimination claim made pursuant to the NYSHRL is the same as it is under ... Title VII") (citations omitted).

**3.** To the extent Plaintiff continues to assert other retaliatory actions not specifically discussed in this opinion, the court finds that they too cannot form the basis for liability.

522 (S.D.N.Y.2003). Also, Defendants have provided evidence that faculty members' salary increases at Vassar are based on the quality of their teaching, and that the Plaintiff's salary increases were determined in part by negative course evaluations that she received.[4]

■ Exclusions from meetings or social functions do not constitute adverse actions either. *See Campbell v. Alliance Nat'l Inc.*, 107 F.Supp.2d 234, 246 n. 8 (S.D.N.Y. 2000).

■ Regarding the failure to mediate Plaintiff's harassment complaint, mediation is not a requirement under Vassar's grievance process. The Defendants' alleged refusal to mediate the Plaintiff's harassment claim is, therefore, equally unrelated to the terms and conditions of the Plaintiff's employment at Vassar, and does not constitute an adverse employment action. *See Negussey v. Syracuse Univ.*, 1997 WL 141679, at *13 (N.D.N.Y.), 1997 U.S. Dist. LEXIS 3853, at *40 (Defendant Syracuse University's failure to mediate a tenure dispute did not constitute an adverse action).

■ With respect to the Plaintiff's supposed academic prerogatives, Plaintiff appears to believe that she is entitled to considerable influence over the hiring decisions of her colleagues. Notwithstanding her beliefs, there is no reasonable basis for Plaintiff's claim that the Bylaws of Vassar College give her that right or that the failure to give her such influence constitutes an adverse employment action. Although the court found in the By–Laws of the Faculty of Vassar College language prescribing a specific advisory role for a

Faculty Appointments and Salary Committee, the court found no language that could reasonably be construed as granting each individual faculty member the right to discuss with the Dean, in person, each and every faculty appointment, and to have the Dean take each faculty member's advice.[5] As such, any failure to give the Plaintiff what she might consider to be a meaningful role in the appointment process does not constitute an adverse action for the purposes of Title VII. *See Brennan*, 67 F.Supp.2d at 374 (finding that excluding the Plaintiff's from meetings did not constitute an adverse action).

■ Plaintiff has placed considerable emphasis on the conditions of her office from August 2001 until May 2003. Although the Second Circuit has not yet resolved whether the loss of an office constitutes an adverse employment action, *see Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir.1997), some courts have assumed, under different circumstances, that a workspace reassignment may be a sufficiently material adverse employment action to satisfy the third element of a cause of action for retaliation. *See e.g., Pellei v. International Planned Parenthood Federation*, 1999 WL 787753, at *12, 1999 U.S. Dist. LEXIS 15338, at *35 (holding that plaintiff's reassignment to "small, poorly lit, isolated cubicle" was sufficient); *Marks v. New York Univ.*, 61 F.Supp.2d 81, 95 n. 15 (S.D.N.Y.1999).

■ But notwithstanding these cases, a jury could not reasonably find, based on facts submitted by the Plaintiff herself, that the Defendants' actions with respect to the Plaintiff's office constituted an ad-

---

**4.** It is worth noting that, in *Bickerstaff I*, the Second Circuit also found that salary increases at Vassar were based on scholarship, teaching and service and ultimately affirmed the dismissal of the Plaintiff's Equal Pay Act claim. *See* 196 F.3d at 448–49, 457.

**5.** The court cannot, moreover, conceive of how Vassar or any other college could effectively function if every faculty member was guaranteed the decision-making role that the Plaintiff appears to demand in this case.

verse action in this case. First, the Plaintiff remained in the office at issue only after refusing to move, along with the rest of the Africana Studies Program, to a new location on a different floor, and after requesting that she be allowed to remain in her first floor office; the items of storage were in an adjacent, separately enclosed area—not the Plaintiff's workspace—and belonged to the Environmental Studies program, which assumed the rest of the floor including the space next door to the Plaintiff's office. Second, Dean Page offered the Plaintiff a new office in December 2001 but the Plaintiff again refused to move. Third, Plaintiff was offered, and ultimately accepted, a new office in the basement, and no longer occupies the office used partly for storage.[6]

 Therefore, Plaintiff was, in large measure, responsible for her own isolation. Moreover, she had space (although perhaps not a lot) to work and meet with others at all times, and has never complained about adequate lighting or any other deficiency that would make working impossible. Although the use of adjacent office space for storage may have been inconvenient, it could not have prevented her from performing office functions. As such, her allegations with respect to her office cannot reasonably be construed as an adverse action. And even assuming, *arguendo*, that these facts do constitute an adverse employment action, the Defendants' established desire to move the entire Africana Studies Program to another location, Plaintiff's failure to move with her colleagues, and Defendants' desire to give the Environmental Studies Program storage space near its newly assigned offices provides nondiscriminatory explanations for Plaintiff's office location and condition that have gone unrebutted by the Plaintiff.

 With respect to all the alleged retaliatory actions, Plaintiff makes two arguments in response: First, Plaintiff argues that even if none of the actions that the Plaintiff alleges could individually be characterized as adverse, a series of actions taken against the Plaintiff may, in the aggregate, constitute such conduct. Courts in this district have, on occasion, held that a series of individually insufficient allegations may constitute an adverse action in the aggregate. *See, e.g., Timothy v. Our Lady of Mercy Med. Ctr.,* 2004 WL 503760, at *6–7 (S.D.N.Y.), 2004 U.S. Dist. LEXIS 3970, at *19–20 (citing cases). But even assuming that such a theory is legally cognizable in this Circuit, Plaintiff could not reasonably rely upon it in this case. Plaintiff has either admitted or failed to controvert that, since the filing of *Bickerstaff I*, she continues as a tenured professor at Vassar, has had her salary increase by 20% over six years, has been granted a full semester's paid leave, and has been invited to (and has attended) dinners at the homes of the President and Dean of the faculty of Vassar College. The undisputed record, read as a whole, hardly indicates a campaign of retaliatory discrimina-

---

**6.** Plaintiff has complained that she lacks her own printer in her new basement office. But this cannot form the basis of an adverse action either. Plaintiff herself described her need to use a printer in another office as "inconvenient," but, as mentioned, the Second Circuit has held that, in order to be "materially adverse," a change in working conditions must be more disruptive than a mere inconvenience. *See Weeks,* 273 F.3d at 85. Moreover, the undisputed facts indicate that other faculty members at Vassar do not enjoy individual use of a printer either. Neither, for similar reasons, did any humidity or related problems in the basement office constitute an adverse action. One could not reasonably argue that the Plaintiff was banished to the basement against her will and, moreover, the Plaintiff admits that the Defendants provided her with a dehumidifier to address any problems with humidity.

tion or meaningful diminishing of her job status.

■ Second, Plaintiff argues that the reason that Vassar is incapable of adversely affecting numerous aspects of the Plaintiff's employment is because she is tenured, and therefore the court should consider the Defendants' actions as adverse in the context of this case. There is not, however, any legal authority for carving out an "academic employment" exception to the adverse employment requirement in Title VII cases in this circuit. On the contrary, the adverse action requirement has been applied to other cases brought by university professors in this circuit. *See, e.g., Spencer v. City Univ. of New York/College of Staten Island,* 932 F.Supp. 540, 549 (S.D.N.Y.1996); *Negussey,* 1997 WL 141679, at *13, 1997 U.S. Dist. LEXIS 3853, at *40. As such, this Plaintiff, like any Plaintiff asserting similar claims, must allege a legally cognizable adverse action.[7]

Therefore, Plaintiff's retaliations claims are dismissed.

### C. State Law Claim Regarding Vassar's Failure to Mediate Intra-collegiate Harassment Complaint

The Plaintiff alleges that, in addition to the violation of federal and state law with respect to its treatment of the Plaintiff, Vassar has violated its own rules and policies as stated in its governing rules when President Ferguson and Dean Fainstein refused to mediate the Plaintiff's intra-collegiate harassment complaint and dismissed the grievance without further investigation.

■ Plaintiff cannot assert this claim here, however, because claims based upon the rights or procedures found in college manuals, bylaws and handbooks may only be reviewed by way of a special proceeding under Article 78 of New York's CPLR in New York State Supreme Court. *See Byerly v. Ithaca College,* 290 F.Supp.2d 301 (S.D.N.Y.2003) (citing *Maas v. Cornell Univ.,* 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999)). The Article 78 proceeding has a four month statute of limitations and the Plaintiff never initiated Article 78 proceedings in this case. Thus, the state law claims predicated upon the alleged failure of the Defendants to adhere to their own procedures regarding mitigation of harassment, and failure to mediate her intra-collegiate harassment complaint, should be dismissed.

### D. Hostile Environment Claim

■ In order to survive summary judgment on a claim of a hostile work environment, the plaintiff must produce evidence that the workplace was permeated with discrimination, intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir. 2000). Isolated instances of harassment ordinarily do not rise to this level. *See, e.g., Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992). Rather, the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were "sufficiently continuous and concerted" to have altered the conditions of her working environment. *Perry v. Ethan Allen, Inc.,* 115 F.3d 143, 149 (2d Cir.1997) (quoting *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 577 (2d Cir.1989)) (internal quotations omitted).

---

**7.** Having found that the alleged acts of retaliation in this case do not withstand the *McDonnell–Douglas* test, the court does not reach the issue of whether many of the alleged acts of retaliation in this case are time barred, or the issue of whether Plaintiff's salary claim is barred by principles of res judicata.

The Plaintiff has produced no evidence of a racially discriminatory work environment in this case. The Plaintiff's allegations do not include a single racial comment or personal insult made about the Plaintiff, let alone a pattern of such comments. Rather, the Plaintiff appears to introduce race only through the fact that she is African American, or through her connections to the Africana Studies Program. Her personal perception of racial hostility is woefully inadequate to support a hostile environment claim in this case.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.

The clerk of the court is directed to close the case.

It is so ordered.