■ CONSTELLATION ENERGY SERVICES OF NEW YORK, INC., Respondent, v NEW WATER STREET CORP., Appellant. [46 NYS3d 25]—

Order, Supreme Court, New York County (Charles E. Ramos, J.), entered March 21, 2016, which denied defendant's motion to dismiss the complaint, unanimously affirmed, without costs.

Defendant failed to present documentary evidence that either flatly contradicts the allegations in the complaint so as to warrant dismissal pursuant to CPLR 3211 (a) (7) (*see Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999]) or conclusively establishes a defense as a matter of law so as to warrant dismissal pursuant to CPLR 3211 (a) (1) (*see Leon v Martinez*, 84 NY2d 83, 88 [1994]).

The parties entered a "Power Sale Agreement" and a "Confirmation" (collectively, the agreement) under which defendant agreed to purchase all of the electricity used in its building from plaintiff. The agreement provided that defendant would pay a "Fixed Rate" for the electricity, which was based on a "Baseline" number of kilowatt hours. However, the agreement provided that the fixed rate was subject to adjustment, stating, "If Seller determines that there has been a material and sustained change from an Account's Baseline *for reasons other than Force Majeure* which results in an increased cost or decreased revenue to Seller ('Cost'), Seller may request that Buyer and Seller meet and agree on a Pricing adjustment to reflect such Cost; provided[,] however, if Buyer and Seller cannot mutually agree, then Seller may pass-through the Cost, without markup" (emphasis added).

On October 29, 2012, Hurricane Sandy flooded the building, leaving it without electrical power. Mechanical systems and telecommunications equipment in and around the building were also destroyed. While electricity was completely restored to the building no later than March 25, 2013, defendant contends that tenants with space below grade could not move back in until mid-2015, when repairs were completed, which led to energy usage below the baseline.

Plaintiff seeks to recover from defendant $1,290,865 in dam-

ages, representing its net lost revenue resulting from defendant's failure to meet the baseline. Asserting that it was unable to meet the baseline due to the effects of Hurricane Sandy, defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), on the grounds that the force majeure and consequential damages clauses in the agreement provide an absolute defense and that in any event plaintiff failed to follow the contractual requirements for a rate adjustment.

Force majeure clauses are to be interpreted in accord with their purpose, which is "to limit damages in a case where the reasonable expectation of the parties and the performance of the contract have been frustrated by circumstances beyond the control of the parties" (*United Equities Co. v First Natl. City Bank*, 52 AD2d 154, 157 [1st Dept 1976], *affd on op below* 41 NY2d 1032 [1977]). "[W]hen the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure" (*Route 6 Outparcels, LLC v Ruby Tuesday, Inc.*, 88 AD3d 1224, 1225 [3d Dept 2011]).

Here, the force majeure clause is expansive in scope and affords protection to *both* plaintiff and defendant, by stating, in pertinent part, "*A Party* shall not be considered to be in default in the performance of its obligations under this Agreement or any effective Confirmation if its ability to perform was prevented by Force Majeure. For purposes of this Agreement and any effective Confirmation, *Force Majeure means an event which prevents one Party from performing its obligations hereunder*, which event was not (i) within the reasonable control of, or (ii) the result of the negligence of, the Claiming Party, and which, by the exercise of due diligence, the claiming Party is unable to overcome or avoid. Force Majeure shall include, *without limitation*: a condition resulting in the curtailment or disruption of firm Energy supply or the transmission on the electric transmission and/or distribution system; restraint by court order; any action or non-action by, or the inability to obtain necessary authorizations or approvals from[,] any Authorized Entity; or a Force Majeure event experienced by an Authorized Entity. Force Majeure shall not include loss or failure of either Party's markets or supplies . . . ." (emphasis added).

The agreement also provides that a force majeure event may be a defense to a price adjustment claim, stating that plaintiff may seek its increased costs or decreased revenue if it "determines that there has been a material and sustained change from an Account's Baseline for reasons other than Force

Majeure." By these express terms, the expansive force majeure clause was intended to protect *any party* to the agreement which was unable to perform its obligations under the contract by a force majeure event, defined as "an event which prevents *one Party* from performing its obligations hereunder, which event was not (i) within the reasonable control of, or (ii) the result of the negligence of, the Claiming Party, and which, by the exercise of due diligence, the claiming Party is unable to overcome or avoid" (emphasis added). The examples that follow this specific definition are qualified by the statement that they are "without limitation," and do not limit the application of the clause to the scenario in which the force majeure event curtails or disrupts the transmission of electricity, rather than where the buyer's actual usage did not meet the baseline because, as a result of the damage from an unforeseen event (Hurricane Sandy), a certain number of tenants were unable to occupy the building, even after power was restored.

Plaintiff argues that the force majeure clause does not provide a defense to its rate adjustment claim because the agreement did not impose a contractual obligation on defendant to reach the baseline, which only served as a basis for determining the final rate. However, plaintiff's interpretation fails to give due weight to the language of the price adjustment clause allowing plaintiff to recover its "increased cost or decreased revenue" if the baseline was not met. By allowing plaintiff to recover its decreased revenue, the clause effectively obligated defendant to pay for the baseline amount of electricity, whether it used it or not.

Nevertheless, the motion to dismiss should be denied because defendant has not shown that the force majeure clause would be an absolute defense. Defendant has not established as a matter of law that its failure to meet the baseline was an unavoidable result of the storm, including whether or not the tenants could have been restored to their space sooner, and whether the failure to do so was beyond its control.

Furthermore, the agreement states that "Force Majeure shall not include loss or failure of either Party's markets or supplies." While defendant contends that there was no failure in the rental market in that its tenants continued to pay rent, this issue is not suitable for determination on a motion to dismiss.

The court correctly found that the limitation of liability provision precluding recovery of consequential damages does not negate or apply to the provision in the confirmation that provides for plaintiff's recovery of costs related to material energy usage deviations.

Defendant has not proven that plaintiff waived its right to the claimed amounts. The documentary evidence does not conclusively establish that plaintiff failed to follow the contractual procedures required for recovering those costs. Issues of fact exist as to whether plaintiff failed to initiate the process to implement the pricing adjustment by requesting that the parties meet and agree on the adjustment. Concur— Sweeny, J.P., Mazzarelli, Andrias, Webber and Gesmer, JJ.