John LAURIA, and Dawn Lauria, Plaintiffs,

v.

Timothy DONAHUE, Gerard Reynolds, Ann Henning, Frank Zuzzi, and Nextel of New York, Inc., doing business as Nextel Communications, Defendants.

No. 05–CV–03437 (ADS)(ARL).

United States District Court, E.D. New York.

July 19, 2006.

Richard J. Merritt, Esq., Lindenhurst, NY, for Plaintiffs.

Proskauer Rose LLP, by Elise M. Bloom, Esq., of Counsel, New York, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the District Court must again address two issues apparently without the benefit of Second Circuit precedent: (1) whether there is individual liability under the Americans with Disabilities Act ("ADA"); and (2) whether a spouse can bring a cause of action under the ADA for loss of the employee's consortium and services.

This is an action based on alleged discrimination and retaliation under the Americans with Disability Act ("ADA"), and negligence under New York state law, arising from the plaintiff John Lauria's employment with the defendant Nextel of New York, Inc. John Lauria claims that the defendants Timothy Donahue, Gerard Reynolds, Ann Henning and Frank Zuzzi, (collectively the "individual defendants") and Nextel of New York, Inc. ("Nextel"), exposed him to tuberculosis and viral pneumonia in the workplace, and then, as a result of this exposure, subjected him to unlawful discrimination and retaliation by terminating his employment. His wife Dawn Lauria also seeks damages for loss of her husband's services and consortium as a result of the actions of the defendants. Currently before the Court is a motion by the defendants, pursuant to Rules 8(a), 12(b)(2), 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."), to dismiss all of the plaintiffs' claims, except for John Lauria's claim under the ADA against Nextel.

## I. BACKGROUND

### A. Factual Background

The following facts are contained in the complaint dated July 20, 2005, unless otherwise noted. On June 15, 2002, plaintiff John Lauria was hired by Nextel as a sales

manager. As a result of John Lauria's performance, he was subsequently promoted to senior sales manager in October 2002 and regional sales manager in August 2003. Over the course of his employment in 2003–04, John Lauria received numerous awards for his sales performance and achieved a 90% satisfaction rating for employee relations at Nextel.

In August 2003 after being promoted to regional sales manager, John Lauria was assigned to conduct business with another Nextel employee, one Juan Paez. During this time John Lauria and Paez attended meetings and company functions together, and also, they shared company cars. In or about August 2003 John Lauria began to feel ill, but a routine medical examination revealed no abnormalities. John Lauria was then advised by his supervisor, Peter Pisano, to get tested for tuberculosis ("TB"), which he did and the test was positive. A positive TB test is indicated by a swelling red welt which appears on one's arm around the area of injection. According to John Lauria, it was only after he tested positive for TB that he became aware that he had previously been exposed to any dangerous disease.

For the years 2003, 2004, and 2005, Zurich of North America ("Zurich") was responsible for processing the medical claims for Nextel employees. Zurich also made the determination as to the date the injury occurred. According to the complaint, "Zurich established an accident date of September 7, 2003 for the exposure of plaintiff, John Lauria to active TB." Compl. ¶ 32. Allegedly, "Zurich established and assigned accident dates for other Nextel employees exposed to TB thus placing defendants on notice of exposure to the deadly disease among Nextel employees." Compl. ¶ 33.

After his positive test results, John Lauria became aware that Paez was infected with active TB. John Lauria claims that as a result of his workplace contact with Paez, he contracted TB. John Lauria alleges in his complaint that the individual defendants Donahue, Zuzzi, Henning and Reynolds, who were all employed by Nextel, were negligent "and/or" grossly negligent in exposing him to TB. Compl. ¶¶ 46–47. Donahue is the CEO of Nextel, and Reynolds, Zuzzi and Henning appear to be John Lauria's supervisors who were responsible for John Lauria's work assignments, promotions, and the persons assigned to work with him. John Lauria asserts that the defendants were aware that Paez was infected with TB, and nevertheless, ordered him to work in close proximity to Paez without warning him of the possible dangers. In opposition to the defendants' motion, John Lauria submitted an affidavit which stated that Reynolds, Henning and Zuzzi all revealed to him that they had personal knowledge of Paez's condition "long before [he] tested positive."

John Lauria was then medically treated for TB with the drug referred to as "IHN" for a period of nine months. According to John Lauria, INH causes permanent liver damage which is know to be fatal after reaching the age of 60. John Lauria claims that this medication has resulted in his "permanently depleted immune system." Compl. ¶ 28.

In October 2004, John Lauria was told by an unidentified Nextel employee that he had been exposed to viral pneumonia ("VP") in the workplace and as a result of this exposure could be a carrier. According to John Lauria's affidavit, he contracted VP at a Nextel employee golf outing in September 2003, which took place at the Marriot Windwatch on Long Island. John Lauria played in a foursome with Bob Hearn, who had previously been out sick for two weeks prior to the golf outing. John Lauria claims that Bob Hearn was

diagnosed with a highly contagious strain of VP and that the defendants had knowledge of this prior to the golf outing. According to John Lauria's affidavit, after the golf outing took place, Henning directed Zuzzi to call John Lauria and instruct him to go to an infectious disease medical control doctor for testing. John Lauria asserts that the defendants were negligent and/ or grossly negligent in exposing him to VP. In this regard, John Lauria claims that the defendants were aware that Hearn had VP, but took no safeguards to avoid his exposure.

In October 2004, Nextel presented John Lauria with a waiver to sign which would relieve Nextel from liability for his exposure to and treatment of TB. According to John Lauria's affidavit, the waiver required that he limit his remedy solely to Workers' Compensation benefits. John Lauria refused to sign the waiver because the "exposures were either intentional acts or done with such wanton disregard for [his safety] that they constituted gross negligence." Further, John Lauria claimed that because he refused to sign the waiver that he was "discriminated against and unjustly terminated from employment with Nextel," and that this was a retaliatory discharge.

The complaint further states that on November 4, 2004, Lauria was asked to attend a meeting with the defendants Henning, Zuzzi, and Reynolds. Prior to the meeting, Lauria alleges that they "intentionally subjected [him] to discriminatory and adverse employment action by forcing him to sit in a hallway for five (5) hours after he had performed a normal days work at Nextel facilities." Compl. ¶ 51. John Lauria alleges that the defendant had him wait in the hallway for five hours because they planned to take advantage of his weakened physical and mental condition and thereby get him to admit to allegations of company credit card misuse. He claims that the defendants were aware of his depleted immune system and that they intentionally placed him under extreme duress and unjustly interrogated him, although they knew through cursory investigation that the expenditures on the credit card were justified and approved by management. Over the course of the meeting John Lauria asserts that he began to "exhibit sickness and signs of extreme fatigue," which ultimately caused him to collapse and go into a coma. He was taken to the hospital by an ambulance and claims that Nextel later declined to pay the cost of medical treatment. According to page 7 of the memorandum of law filed in opposition to the defendants' motion to dismiss, after John Lauria awoke in the hospital the next day, he was told that his employment was terminated and that he "signed an admission before he blacked out." Plts. Mem. of Law in Opp'n at 7. The plaintiffs do not elaborate on the substance of the admission he allegedly signed.

John Lauria further claims that as a result of his termination, he did not receive certain benefits. These benefits include: (1) personal and company health care Benefits; (2) an employee stock option benefit; (3) salary and commission compensation; (4) accrued vacation and sick leave benefits; (5) family health care benefits; (6) access to laptop and other Nextel computers; (7) access to facilities of Nextel afforded other employees; (8) association with other Nextel employees; and (9) future medical treatment for debilitating diseases he contracted through the defendants' negligence or gross negligence.

John Lauria also alleges that Nextel policies and procedures require supervisors to issue a termination letter to employees in which they state the reasons for termination. John Lauria asserts that the de-

fendants refused to issue a termination letter to him, and thus "discriminated against him because of his disability." He also claims that it is his information and belief that the Nextel Employee Handbook requires defendants to conduct an exit interview before they terminate employees. According to John Lauria, this interview was never done and thus he was further discriminated against because of his disability.

John Lauria asserts that he was terminated even though he was still able to perform his job. The complaint alleges that his termination "was accomplished with disparate impact because other employees were allowed to remain employed after signing waivers." John Lauria believes that the defendants were trying to send a message to other employees about the consequences of refusing to sign the waiver.

Finally, John Lauria asserts that the defendants "had full knowledge" that their acts would adversely impact his wife, Dawn, so that she suffered from deprivation of love, affection and consortium. Further, it is claimed that Nextel was required to send Dawn Lauria a letter notifying her of cessation of health care benefits which is commonly referred to as a COBRA letter. Dawn Lauria claims that she never received such a letter. However, according to the defendants' motion to dismiss, a letter was sent to John Lauria concerning his COBRA continuation coverage rights. The defendants submitted a copy of this letter with their motion to dismiss. Def. Reply Ex. A. The defendants allege that the COBRA forms that were sent to "John T. Lauria and Family" did provide notification to Dawn about her insurance options as a result of her husband's termination.

## B. Procedural History

After being discharged from Nextel, John Lauria filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Nextel. The EEOC dismissed John Lauria's claim on or about April 29, 2005. According to the EEOC, "based on its investigation, the EEOC [was] unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." The EEOC decision included a "Notice of Suit Rights," authorizing John Lauria to file suit under Title VII, the Americans with Disabilities Act, or the Age Discrimination in Employment Act. John Lauria was required to file this suit within 90 days of the date of the notice.

Lauria filed a lengthy and confusing complaint on July 20, 2005, against Nextel, Donahue, Reynolds, Henning and Zuzzi. John Lauria's wife, Dawn, also was joined in the suit against the individual defendants and Nextel for the future loss of her husband's companionship and support as a result of the defendants' alleged actions. The complaint states that John and Dawn Lauria seek "remedies under 42 U.S.C. 2000 and Titles I & II of Civil Rights Act and the [ADA]" for the damages John Lauria sustained after he was discriminated and retaliated against by the defendants because of the disabling diseases he allegedly suffered.

The plaintiffs' complaint also appears to contain state law claims of negligence or gross negligence, intentional infliction of emotional distress ("IIED"), and breach of implied contract. However, the complaint only alleges the following three causes of action. The first cause of action alleges that the defendants were negligent "and/

or" grossly negligent in exposing Lauria to TB and VP, as well as, the use of INH which is known to lead to long term harm. Compl. ¶ 47. The second cause of action alleges that John Lauria was unlawfully terminated from his employment. The third cause of action involves the defendants' alleged discrimination and retaliatory discharge of John Lauria because he did not sign the waiver.

The defendants filed this motion to partially dismiss the complaint under Fed. R.Civ.P. 8(a), 12(b)(2), 12(b)(6). The defendants moved to dismiss all of the claims filed by the plaintiffs, except for John Lauria's claim under the ADA against Nextel. First, the defendants argue that under 12(b)(2) this Court lacks personal jurisdiction over Donahue, the CEO of Nextel. Second, the defendants assert that all claims under the ADA must be dismissed because there is no individual liability under the ADA. In addition, the defendants state that Dawn Lauria's claim under the ADA must be dismissed because she lacks standing to sue under the ADA. Third, the defendants allege that John Lauria's negligence and/ or gross negligence claim should be dismissed because it is barred by New York Workers' Compensation law. Fourth, the defendants assert that John Lauria's IIED claim is barred by the statute of limitations and is deficient as a matter of law. Fifth, the defendants argue that John Lauria's claim for breach of implied contract must be dismissed as a matter of law. Finally, the defendants move to dismiss Dawn Lauria's loss of consortium claim as deficient as a matter of law.

In their opposition, the plaintiffs first assert that their claim against the individual defendants and Nextel withstands any pleading challenge under Rule 8. Second, the plaintiffs argue that the New York Workers' Compensation Statute does not apply to intentional tort claims. Moreover, they further allege that the alleged actions of the defendants in exposing John Lauria to VP after his TB exposure was outrageous and will support a cause of action for IIED. Third, the plaintiffs state that New York's long arm statute gives them personal jurisdiction over Timothy Donahue. Lastly, the plaintiffs argue that they deserve continued coverage under COBRA.

The defendants filed a reply, which again addressed the personal jurisdiction issue under New York's long arm statute; in which they argue that Workers' Compensation bars negligence claims; that the IIED claim is barred by the statute of limitations or is deficient as a matter of law; and that the plaintiffs cannot state a claim under ERISA.

## II. DISCUSSION

### A. The Standards

A complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004); *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). In ruling on a motion under Fed.R.Civ.P. 12(b)(6), a federal district court is "required to accept as true all factual allegations in the complaint," and must construe the complaint in the light most favorable to the plaintiff. *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998); *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The motion to dismiss should not be granted unless it appears "beyond a reasonable doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. At this time, the court need not consider if the claim will ultimately be successful or if it will fail, but rather assess if the plaintiff has presented a legal claim upon which relief may be granted. *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991). Furthermore, in reviewing a 12(b)(6) motion, a "district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999).

### B. As to the ADA Claims

Title I of the ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (2006); *see also Equal Employment Opportunity Commission v. Staten Island Savings Bank,* 207 F.3d 144, 148 (2d Cir.2000).

The statute defines a disability as "(a) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A plain reading of the provisions of the ADA reveals that it was designed to prohibit employers from discriminating against an otherwise qualified individual on the basis of his or her disability. *See* 42 U.S.C. § 12112. An individual is further defined by the statute as "other-

wise qualified" if he or she can "with or without reasonable accommodation, .... perform the essential functions of the employment that an individual holds or desires." *Id.* § 12111(8).

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered [an] adverse employment action because of his disability." *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 169 (2d Cir.2006) (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)); *see also Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869–70 (2d Cir.1998); *Corr v. MTA Long Island Bus,* 27 F.Supp.2d 359, 364–65 (E.D.N.Y.1998).

### 1. As to the Claims against the Individual Defendants

■ In the complaint the plaintiffs appear to assert claims under the ADA against the individual defendants. Although the Second Circuit has yet to address the issue of individual liability under the ADA, both the Seventh and Eleventh Circuits have held that there is no individual liability under the ADA. *See Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir. 1996); *see also EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir. 1995). Moreover, many district courts in the Second Circuit have considered the issue and have held that an employer's agent cannot be held individually liable under the ADA. *E.g., Garibaldi v. Anixter, Inc.,* 407 F.Supp.2d 449, 451 (W.D.N.Y. 2006); *Rodriguez v. Kenny,* No. 00 CV 8022(GBD), 2005 WL 3358479, at *1 (S.D.N.Y. Dec.6, 2005) ("The law is well settled that individuals cannot be held lia-

ble for Title VII and ADA violations."); *Harrison v. Indosuez,* 6 F.Supp.2d 224, 229 (S.D.N.Y.1998); *Herzog v. McLane Northeast, Inc.,* 999 F.Supp. 274, 275 (N.D.N.Y.1998); *Lane v. Maryhaven Center of Hope,* 944 F.Supp. 158, 162 (E.D.N.Y.1996); *Cerrato v. Durham,* 941 F.Supp. 388, 395 (S.D.N.Y.1996).

In *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995), the Second Circuit focused on the language of Title VII and the word "employer" and inferred that Congress never sought to hold individuals liable under Title VII. The court reasoned that the agent clause in Title VII, which limits liability to employers with fifteen or more employees, was designed to protect small entities from expensive discrimination litigation. Accordingly, the court concluded that it was implausible to think that Congress would immunize small employers, while at the same time imposing liability against individual employees. *Id.*

Both Title VII and the ADA define the term employer as, "a person engaged in an industry affecting commerce who has fifteen or more employees ... *and any agent of such a person.*" 42 U.S.C. § 2000e(b) (emphasis added). Therefore, it appears that courts in the Second Circuit have applied the holding in *Tomka,* that it would be inconceivable that Congress would avoid imposition on small employers, while at the same time imposing individual liability. *See Lane,* 944 F.Supp. at 162.

Accordingly, the plaintiffs' claims under the ADA against the individual defendants are dismissed.

### 2. As to Dawn Lauria's ADA Claim

The complaint alleges that Dawn Lauria is seeking damages for the harm and suffering that has resulted from the defendants' actions. The complaint asserts that the defendants' actions psychologically damaged Dawn Lauria, as she must face the future without her husband's love, affection and services.

The question of whether a dependent of an employee has standing to sue under the ADA has apparently not yet been decided by the Second Circuit. However, district courts in New York have addressed the issue and have uniformly decided that if an individual is neither an employee, or former employee of a company, he or she does not have the right to sue under the ADA. *See Morgenthal v. AT & T,* No. 97–CIV–6443(DAB), 1999 WL 187055, at *1–2, 1999 U.S. Dist. LEXIS 4294, at *4 (S.D.N.Y.1999) (holding that because the plaintiff was not an employee of the defendant he could not be considered a "qualified individual" under the ADA); *Muller v. First Unum Life Ins. Co.,* 23 F.Supp.2d 231, 235 (N.D.N.Y.1998) (stating that the plaintiff's wife lacked standing to sue under the ADA); *Willson v. Association of Graduates of the United States Military Academy,* 946 F.Supp. 294, 296 (S.D.N.Y. 1996) (holding that a spouse lacked standing to sue her husband's employer under the ADA for the discrimination directed against her husband); *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 159 (S.D.N.Y.1995) (dismissing loss of consortium claim brought under the ADA because the claim cannot be derived from a spouse's suit). This conclusion is logical from a plain reading of the ADA statute, which defines a qualified individual as a person who can "perform the essential functions of the employment that an individual holds or desires." 42 U.S.C. § 12111(8).

■ Accordingly, because Dawn Lauria was neither an employee nor former employee of Nextel, her claim under the ADA is dismissed.

## C. As to the New York State Law Claims

### 1. Negligence and Gross Negligence

 The New York Workers' Compensation Law exclusive remedy doctrine bars an employee from bringing a negligence or gross negligence based claim against an employer and the employer's agent. *See* N.Y. Work. Comp. Law § 11. Negligence is defined as the lack of ordinary care and diligence. Gross negligence may be defined as, ". . . very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as the other person may be affected." *Burke v. Spear,* 277 F.2d 1, 2 (2d Cir.1960) (quoting *Shaw v. Moore,* 104 Vt. 529, 162 A. 373 (1932)). Gross negligence encompasses conduct that involves reckless indifference to the rights of others, *Williams and Sons Erectors, Inc. v. South Carolina Steel Corp.,* 983 F.2d 1176, 1184 (2d Cir.1993), or " 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.,* 81 N.Y.2d 821, 824, 611 N.E.2d 282, 595 N.Y.S.2d 381 (1993) (quoting *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992)); *Aphrodite Jewelry, Inc. v. D & W Cent. Station Alarm Co., Inc.,* 256 A.D.2d 288, 289, 681 N.Y.S.2d 305 (2d Dep't 1998). The act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care. *Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir. 1998).

 If a party moves to dismiss a negligence or gross negligence claim based on the theory that such claim is barred by the Workers' Compensation law, the court must determine if the cause of action is based upon accidental injury and occurred during the course of employment. N.Y. Work. Comp. Law § 11. There is, however, an exception to this exclusivity doctrine. When it has been determined that a plaintiff's injury is the result of an intentional and deliberate act by the defendant or someone acting on his behalf, the defendant is not entitled to such immunity. *Forjan v. Leprino Foods Company,* No. 3:04-cv-00878, 2005 WL 3555950, at *2, 2005 U.S. Dist. LEXIS 38231, at *5 (N.D.N.Y.2005). Courts in New York have determined that:

> In order to constitute an intentional tort the conduct must be engaged in with the desire to bring about the consequences of the act. A mere knowledge and appreciation of the risk is not the same as the intent to cause injury. . . . A result is intended if the act is done with the purpose of accomplishing such a result or with the knowledge that to a substantial certainty such a result will ensue.

*Acevedo v. Consolidated Edison,* 189 A.D.2d 497, 596 N.Y.S.2d 68, 71 (1st Dep't 1993) (quoting *Finch v. Swingly,* 42 A.D.2d 1035, 348 N.Y.S.2d 266 (4th Dept.1973)); *accord Forjan,* 2005 WL 3555950, at *2, 2005 U.S. Dist. LEXIS 38231, at *5.

 In order to plead an intentional tort claim, a plaintiff must be able to point to specific facts and evidence that the defendant intended to cause harm. *Bulis v. Lorenzo,* 142 A.D.2d 707, 531 N.Y.S.2d 107 (2d Dep't 1988) (finding that a mere conclusory allegation in the complaint that defendant acted deliberately does not satisfy evidentiary proof). Accordingly, mere allegations in a complaint that a defendant acted in a "willful", "deliberate", or "intentional" manner in causing harm, will not be enough to uphold an intentional tort claim. *Id.* Further, in analyzing this exception, courts have held that "where the employer is accused of failing to warn an employee of a known hazard, or fails to disclose the

nature of the materials with which the employee is working, the employer's conduct will not constitute an intentional tort." *Greco v. Staten Island University Hospital et. al.,* No. CV–99–7401, 2000 WL 804634, at *2, 2000 U.S. Dist. LEXIS 8360, at *8 (E.D.N.Y.2000); *see also Acevedo v. Consolidated Edison Co. of N.Y. Inc.,* 189 A.D.2d 497, 501–502, 596 N.Y.S.2d 68 (1st Dep't 1993); David B. Harrison, *What Conduct is Willful, Intentional, or Deliberate within Workmen's Compensation Act Provision Authorizing Tort Action for such Conduct,* 96 A.L.R.3d 1064, 1980 WL 130872 (1979). Rather, the courts have held that this alleged conduct constitutes an act of gross negligence, or possibly recklessness, which is not an exception under Workers' Compensation Law. *Id.*

In *Greco v. Staten Island University Hospital,* the court determined that the plaintiff did not adequately plead an intentional tort. *Greco,* No. CV–99–7401, 2000 WL 804634, at *3, 2000 U.S. Dist. LEXIS 8360, at *10. The court stated that Greco's complaint was "bare and conclusory," and that he just had not alleged "specific facts" which proved the defendant's intent to cause harm. *Id.* Greco simply declared in his complaint that, "the hospital willfully and intentionally refused to warn the plaintiff of the toxicity of the material" and "that defendant hospital continued its pattern of willful, contumacious and intentional behavior by failing to disclose the toxic nature of the materials." *Id.* The court held that this statement did not provide enough information or evidence to adequately plead an intentional tort claim.

 Here, the plaintiff's complaint does not adequately plea an intentional tort which would constitute an intentional injury exception to the exclusivity doctrine of the Workers' Compensation Law. Similar to the finding in *Greco,* Lauria's complaint as to the defendants' alleged inten-

tional conduct is bare and conclusory. The plaintiff's complaint states under the nature of the action that "this is an action for damages resulting from Defendants *negligence and gross negligence* in forcing plaintiff, to first be exposed to.... TB and VP in the workplace and then to suffer severe discrimination after being diagnosed with TB in the workplace." Compl. ¶ 1 (emphasis added). The complaint further alleges that the defendants, "while having knowledge of the fact that Juan Paez was infected with active contagious TB, *negligently* failed to take necessary precautions .... but instead *negligently* ordered him to conduct company business in close proximity with Juan Paez." Compl. ¶ 23 (emphasis added). Under the first cause of action, the plaintiff again asserts that, "because of the defendant's [sic] *negligence and/ or gross negligence* in exposing John Lauria to TB and VP ...." as well as, "that the *negligence and/ or gross negligence* of the defendants .... caused John Lauria to be treated with INH...." Compl. ¶ 47. Nothing in Lauria's complaint alleges that the defendants acted in an intentional manner in exposing him to TB or VP. Thus, although Lauria's complaint states that he is making an intentional infliction of emotional distress cause of action, he does not point to specific facts or evidence included in the complaint to support his claim. Compl. ¶ 5.

Furthermore, it is only in the plaintiff's opposition to the defendants' motion to dismiss, that the plaintiff alleges intentional conduct on behalf of the defendant. In the plaintiff's opposition, in describing the facts of the case, the plaintiff alleges that the defendants, "*intentionally* ordered the plaintiff into close proximity [with Paez]" and "John Lauria was again exposed to another deadly disease, VP, in the workplace, through the *intentional* acts of the named defendants." Plts. Mem. of Law in

Opp'n at 1–2. The plaintiff's opposition additionally states that the defendants' knowledge of the dangers that they are exposed Lauria to amounts to *"intentional outrageous conduct* which is outside the purview of Workers' Compensation Statutes." Plts. Mem. of Law in Opp'n at 11 (emphasis added). The opposition concludes that when "the complaint goes on to allege a second exposure to VP while the plaintiff is known to have a depleted immune system, [that] the bar must be raised to the level of outrageous conduct." (Opp'n 13).

■ Nevertheless, it is not sufficient that the plaintiff asserts in his opposition to the defendants' motion that his exposure to the disease was intentional. In deciding a motion to dismiss the Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken...." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir. 1993). Accordingly, the Court finds that the plaintiff has not sufficiently plead an intentional tort claim.

## 2. Intentional Infliction of Emotional Distress

■ The statute of limitations for the tort of IIED is one year. *See* N.Y. C.P.L.R. § 215(3); *see also Overall v. Estate of Klotz,* 52 F.3d 398, 402 (2d Cir. 1995). Here, the plaintiffs' claim for IIED is premised on their claim that the defendants allowed John Lauria to be exposed to TB in August 2003 and VP in September 2003. However, the plaintiffs did not file the complaint until July 20, 2005, almost two years after the alleged exposure. Accordingly, the Court grants the defendants motion to dismiss this claim as time-barred.

## 3. Breach of Implied Contract

The Plaintiffs' complaint appears to allege that the defendants breached an implied contract, but the basis for this claim is not clear. Liberally construing the complaint one can gather that the plaintiffs claim for breach of implied contract does not pertain to his discharge from employment, but that Nextel failed to adhere to its internal policies regarding post-discharge conduct. John Lauria claims that as a result of his termination, he did not receive certain benefits; he was not issued a termination letter; he did not receive an exit interview; and Dawn Lauria did not receive a COBRA letter.

■ It is well-settled that civil actions against employers for employee benefits that are predicated on common law contract principles are generally preempted by ERISA. *Devlin v. Transportation Communs. Int'l Union,* 173 F.3d 94, 101 (2d Cir.1999); *Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir.1990). In determining whether ERISA preempts a state-law cause of action, "the queries are (a) whether the contract claim asserted is related to an employee benefit plan, and, if so, (b) whether there is an exception under ERISA that precludes pre-emption of the state law [claim]." *Devlin,* 173 F.3d at 101.

■ The plaintiffs have not offered any argument as to why the benefits they claim they were denied are not related to an employee benefit plan, nor do they point to any exception under ERISA that precludes preemption of state law. Accordingly, to the extent that the plaintiffs assert claims for post-employment benefits that they did not receive, such state law claims are preempted by ERISA and they are dismissed.

■ The Court also finds that any claim that the plaintiffs assert for post-

termination benefits that are not related to an employee benefit must also be dismissed. The complaint fails to sufficiently allege or give notice of the required elements of an agreement between the parties, express or implied. *See Nadel v. Play–By–Play Toys & Novelties, Inc.,* 208 F.3d 368, 377 n. 1 (2d Cir.2000) (explaining that an implied-in-fact contract requires the elements of consideration, mutual assent, legal capacity and legal subject matter); *Maas v. Cornell Univ.,* 94 N.Y.2d 87, 93–94, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999). Accordingly, the plaintiffs state law claims for breach of an implied contract are dismissed.

#### 4. Leave to Amend

 When dismissing a claim under Rule 12(b)(6), leave to amend is generally freely granted unless it appears that "the substance of the claim pleaded is frivolous on its face. . . ." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (citing *Moorish Science Temple of Am., Inc. v. Smith,* 693 F.2d 987, 990 (2d Cir.1982)). Fed.R.Civ.P. 15 governs the amendment process of civil pleadings and provides that a plaintiff should be allowed the opportunity to test his claim on the merits, as long as the underlying facts that are relied upon are the subject of proper relief. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

 Here, the Court finds it appropriate to grant John Lauria leave to amend the complaint pursuant to Rule 15(a) in order to re-plead his potential ERISA or state law claims. In this regard, the Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber,* No. 89 Civ. 1657, 1990 WL 71502, at *10, n. 8 (S.D.N.Y. May 24, 1990).

It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed. R.Civ.P. 11.

*Id.*

### III. CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED,** that John Lauria's claims against the individual defendants under the ADA are dismissed with prejudice; and it is further

**ORDERED,** that Dawn Lauria's claims under the ADA against the defendants are dismissed with prejudice; and it is further

**ORDERED,** that the plaintiffs' claims under New York state law are dismissed without prejudice; and it is further

**ORDERED,** that the plaintiffs are granted leave to file an amended complaint in accordance with this order within 30 days of the date of this order; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption as follows:

JOHN LAURIA, Plaintiff,

-against-

NEXTEL OF NEW YORK, INC., doing business as Nextel Communications, Defendants.

**SO ORDERED.**