■ In the Matter of DAVID POWERS, Appellant, v ST. JOHN'S UNIVERSITY SCHOOL OF LAW, Respondent. [973 NYS2d 285]—

In a proceeding pursuant to CPLR article 78 to review a determination of St. John's University School of Law dated September 10, 2010, which rescinded the petitioner's admission and, in effect, denied his application for admission nunc pro tunc, the petitioner appeals from a judgment of the Supreme Court, Queens County (Pineda-Kirwan, J.), entered July 18, 2011, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

The petitioner applied for admission to St. John's University School of Law (hereinafter the law school) in November 2005. In response to a question regarding whether he had ever been charged with, pleaded guilty to, or been found guilty of, a crime, he explained that he had been arrested in New Jersey in July 1999 "by the police shortly after a drug deal," and ultimately accepted a plea bargain pursuant to which he was convicted of possession of a controlled dangerous substance in the third degree, in violation of NJ Stat Ann § 2C:35-10 (a) (1). The petitioner certified on his application that his answers were complete and accurate, and that he understood that his failure to provide truthful answers could result in the denial of admission, dismissal as a student, or rescission of an awarded degree. At the time his application for admission was submitted, the petitioner was unaware that his petition in New Jersey to have his record expunged had been granted.

When the petitioner endeavored to obtain an advance ruling on his eligibility for and the likelihood of his admission to the New York State bar in light of his conviction, the law school first learned of the original charges that had been asserted against the petitioner, including, inter alia, charges for distribu-

tion of LSD in the second degree, possession of LSD with the intent to distribute in the second degree, possession of Ecstasy in the third degree, and possession of Ecstasy with the intent to distribute. The law school then advised the petitioner that he must amend his application for admission and include a full accounting of what transpired with respect to his arrest in July 1999 and an explanation with respect to his failure to initially disclose this information. Although the petitioner advised the law school that the statement in his application concerning his criminal record was not factually incorrect and did not need to be amended, he nonetheless supplemented his application and made available all details and documents surrounding his expunged record. In his supplement, the petitioner acknowledged that he had been arrested for distribution and had knowingly distributed illegal substances, and freely admitted his guilt of that crime, although he maintained that he did not engage in distribution of illegal substances on a regular basis. Following the receipt of the petitioner's supplement, the law school ultimately rescinded the petitioner's admission and, in effect, denied the petitioner's application for admission nunc pro tunc. The law school noted that the petitioner's original application contained material omissions and misrepresentations involving the actual criminal charges that had been brought against him and that his supplemental correspondence acknowledged that he had been charged with and was guilty of distribution of LSD and Ecstasy.

The law school's determination was made on the grounds of the petitioner's misrepresentations and omissions on his application regarding the extent of his prior criminal background, and was based upon the exercise of discretion after a full review. Despite the petitioner's subsequent disclosure, under the circumstances presented here, and in light of the true nature of the petitioner's prior criminal activity, the law school's determination to rescind his acceptance was not arbitrary and capricious, and does not warrant judicial intervention (*see Matter of Harris v Trustees of Columbia Univ. in City of N.Y.*, 62 NY2d 956, *rev'g* 98 AD2d 58, 67-73, for reasons stated in dissent of Kassal, J. [1984]; *Tedeschi v Wagner Coll.*, 49 NY2d 652, 660 [1980]; *Matter of Galiani v Hofstra Univ.*, 118 AD2d 572 [1986]; *see also Matter of Carr v St. John's Univ., N.Y.*, 17 AD2d 632 [1962], *affd* 12 NY2d 802 [1962]; *Matter of Simkovich v Vassar Coll.*, 249 AD2d 551 [1998]).

Since the petitioner disclosed, subsequent to his admission, that he was originally charged with and was guilty of distributing, and possessing with intent to distribute, a controlled

dangerous substance, we do not consider the penalty imposed to be "so disproportionate to the offense . . . as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222, 233 [1974]; *see e.g. Matter of Attard v Kampe,* 95 AD3d 1005 [2012]), thus constituting an abuse of discretion as a matter of law.

Further, contrary to the petitioner's contentions, he was not entitled to invoke the grievance procedure set forth in the law school's student handbook (*see Matter of Mitchell v New York Med. Coll.,* 208 AD2d 929, 930 [1994]).

The petitioner's remaining contentions are without merit. Lott, J.P., Austin and Sgroi, JJ. concur.

Miller, J., dissents and votes to reverse the judgment, grant the petition, annul the determination of St. John's University School of Law, dated September 10, 2010, which rescinded the petitioner's admission to St. John's University School of Law, and remit the matter to St. John's University School of Law for a new determination, with the following memorandum:

St. John's University School of Law (hereinafter St. John's Law School) is a preeminent law school that is a part of a private Catholic Vincentian University. Over the years, St. John's Law School has produced a distinguished group of lawyers and jurists, and has played a key role in the New York City legal community. However, its determination in this case to retroactively deny an admitted student's application for admission after he had successfully completed more than 1½ years of course work, without following the grievance process established in its student handbook, was arbitrary and capricious and in violation of lawful procedure. Accordingly, I must respectfully dissent.

The petitioner, David Powers, filed an application for admission to St. John's Law School on November 10, 2005. At the time, Powers was considering at least 18 other law school programs.

The application for admission to St. John's Law School contained the following question: "Have you ever been charged with, pleaded guilty to, or been found guilty of any crime, offense, or violation (other than a minor traffic violation), or is any such action pending or expected to be brought against you?" In response to this question, Powers answered, "Yes." The application continued: "If yes, please explain in a supplementary statement or electronic attachment the relevant facts, including the nature of the offense, the dates and courts involved, and the penalty imposed, if any. *Note: Although a conviction may have been sealed or expunged from the record by an order of the court, it nevertheless should be disclosed in answer to this question.*"

In response to this request for disclosure, Powers submitted a three-page "Background Disclosure," which indicated, inter alia, that in July 1999, he had been "pulled over by police shortly after a drug deal" and that he had ultimately "accepted a plea bargain to attend an inpatient rehabilitation program and complete probation." Powers stated that he "was convicted of third degree possession of a controlled dangerous substance" and "successfully completed all facets of the [rehabilitation] program and [his] probation." At the time Powers made this disclosure, all records relating to his arrest on July 9, 1999, and all records concerning his "detection, apprehension, detention, trial, or disposition," had been expunged by the Superior Court, Morris County, pursuant to an order dated October 27, 2005.

At the end of the application for admission to St. John's Law School, the following statement appeared: "I certify that the answers to the above questions are complete and accurate. I understand that the failure to provide truthful answers to any of the application questions, or the failure to inform the Admissions Office of any changes in, or additions to, the information contained in my answers, may result in denial of admission, dismissal, or rescission of an awarded degree from St. John's University of Law" Powers certified his application electronically.

St. John's Law School reviewed Powers's application for admission, and did not make any requests for additional information or documentation. According to the affidavit of St. John's Law School Professor Larry Cunningham, the assistant dean for students, St. John's Law School ultimately "granted [Powers's] admission despite his criminal history," and Powers began taking classes as a part-time student in Fall 2006, successfully completing three semesters of course work.

After completing his Fall 2007 semester, Powers was granted a leave of absence so that he could pursue an employment opportunity in Hong Kong. While he was abroad, Powers decided to petition the Appellate Division, Second Judicial Department, for an advance ruling on his application for admission to the New York State Bar (see 22 NYCRR 805.1 [o]). Pursuant to that process, Powers sought a letter from St. John's Law School to submit with his petition for an advance ruling. His submissions to St. John's Law School included a letter that Powers intended to submit to the Appellate Division, in which he indicated that when he was arrested he had originally been charged with distribution of a controlled dangerous substance, but that the charge had been reduced as part of his plea agreement. Powers also stated that he had a drug problem when he was between 16

and 21 years old, and that to "support [his] habit, [he] sometimes would sell drugs to others."

St. John's Law School refused to provide the requested letter on the ground that Powers had failed to disclose in his application for admission the information contained in his proposed letter to the Appellate Division. In subsequent correspondence, St. John's Law School informed Powers that there was "a potential misconduct issue" in that he had failed to disclose the fact that he would "sometimes sell drugs to others" and that he had originally been charged with distribution of a controlled dangerous substance. Powers was further informed that in order "to continue at St. John's School of Law," he would have to "seek to amend [his] application." In order to do so, Powers was instructed to "provide a full accounting of the criminal activity at issue," including "the exact charge, disposition, relevant court dates, and the facts of the crime."

Powers submitted additional materials in response to the request of St. John's Law School, including a Presentence Report, which listed the specific sections of the New Jersey Statutes with which he was charged upon his arrest. Thereafter, Powers was summoned to appear before four deans of the St. John's School of Law: the Assistant Dean for Students-Designate, the Assistant Dean of Admissions and Student Financial Services, the Associate Dean and Professor of Law, and the Vice Dean Emeritus. Powers, who appeared alone, was questioned about additional aspects of his arrest, including the weight of the controlled dangerous substances he allegedly sold and their estimated street value. Although no transcript of this questioning appears in the record, and there is no indication that any written record of the minutes of this meeting was maintained, one of the deans present at the meeting with Powers later indicated that Powers answered the questions put to him by the four deans.

Powers was subsequently informed, in a letter attached to an email message sent to him by the Assistant Dean for Students-Designate, that it had been determined that his application for admission contained "material omissions and misrepresentations involving criminal charges that had been brought against [him]." The letter stated that Powers had subsequently provided St. John's Law School with information that he had been charged with distribution of a controlled dangerous substance, and that he had admitted to St. John's Law School that he was, in fact, guilty of that charge even though he had pleaded guilty to a lesser charge. The letter concluded that, since the application for admission provided that " 'the failure to provide truth-

ful answers to any of the application questions . . . may result in . . . dismissal . . . from St. John's University School of Law' . . . the Law School has rescinded your admission." No additional explanation of this determination or the impact of the punishment appears in the record.

Powers subsequently commenced this proceeding to review the determination rescinding his admission to St. John's Law School. In the petition, Powers contended, among other things, that the determination to rescind his admission after he successfully completed three semesters of law school was arbitrary and capricious, irrational, and in violation of lawful procedure. In a judgment entered July 18, 2011, the Supreme Court denied the petition and dismissed the proceeding. Powers appeals.

The determination of St. John's Law School to rescind Powers's admission after he completed more than 1½ years of course work is arbitrary and capricious and in violation of lawful procedure. Accordingly, the petition should have been granted, and the determination rescinding his admission should have been annulled.

"[H]aving accepted a State charter and being subject to the broad policy-making jurisdiction of the Regents of the University of the State of New York, a single corporate entity of which they are deemed a part . . . private colleges and universities are accountable in a CPLR article 78 proceeding, with its well-defined standards of judicial review, for the proper discharge of their self-imposed as well as statutory obligations" (*Gertler v Goodgold*, 107 AD2d 481, 486 [1985], *affd* 66 NY2d 946 [1985]; *see* Education Law § 214; *see also Maas v Cornell Univ.*, 94 NY2d 87, 92 [1999]).

Accordingly, a proceeding pursuant to CPLR article 78 may be commenced to review whether an administrative determination reached by a private university "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed" (CPLR 7803 [3]; *see Maas v Cornell Univ.*, 94 NY2d at 92).

Since determinations regarding a student's academic qualifications "rest in most cases upon the subjective professional judgment of trained educators, the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community" (*Matter of Olsson v Board of Higher Educ. of City of N.Y.*, 49 NY2d 408, 413 [1980]). "Suspension or expulsion for causes unrelated to academic achievement, however, involve determinations quite closely akin to the day-to-day work of the judiciary" (*Tedeschi v*

*Wagner Coll.*, 49 NY2d 652, 658 [1980]). "Recognizing the present day importance of higher education to many, if not most, employment opportunities, the courts have, therefore, looked more closely at the actions of educational institutions in such matters" (*id.* at 658; *see Klinge v Ithaca Coll.*, 244 AD2d 611, 613 [1997]).

"When, as here, action taken against a student is predicated upon grounds unrelated to academic achievement, the operative standard requires that the educational institution proceed in accordance with its own rules and guidelines" (*Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d 1049, 1052 [2012]). In situations involving nonacademic discipline, when a university "acts within its jurisdiction, not arbitrarily but in the exercise of an honest discretion based on facts within its knowledge that justify the exercise of discretion, a court may not review the exercise of its discretion" (*Matter of Carr v St. John's Univ., N.Y.*, 17 AD2d 632, 634 [1962], *affd* 12 NY2d 802 [1962]; *see Dalton v Educational Testing Serv.*, 87 NY2d 384, 398 [1995]; *Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052; *Matter of Coleman v Hackley School*, 251 AD2d 328, 328-329 [1998]; *Matter of Galiani v Hofstra Univ.*, 118 AD2d 572, 572 [1986]).

However, the decisions of educators are not completely immune from judicial scrutiny, and courts "will intervene if an institution exercises its discretion in an arbitrary or irrational fashion" (*Matter of Olsson v Board of Higher Educ. of City of N.Y.*, 49 NY2d at 414), such that "the bounds of discretion were exceeded" so as to constitute an abuse of discretion (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 232 [1974]). Even where a finding of guilt is confirmed and punishment has been imposed, a punishment that is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness, will not be upheld (*see id.* at 232).

Here, St. John's Law School premised its determination to rescind Powers's admission on the ground that he failed to disclose, in response to the questions contained on the application for admission, that he would "sometimes sell drugs to others" and that he had originally been charged with distribution of a controlled dangerous substance. The email message rescinding his admission also stated that Powers had admitted to St. John's Law School that he was, in fact, guilty of the distribution charge, even though he had ultimately pleaded guilty to a lesser charge pursuant to a plea agreement.

However, the application for admission did not ask potential students to disclose any and all potentially criminal behavior, or seek to compel disclosure of every uncharged crime that an applicant may have engaged in during the course of his or her lifetime. Rather, the application prompted applicants to disclose *charged* offenses: "Have you ever been charged with, pleaded guilty to, or been found guilty of any crime, offense, or violation." Accordingly, by its own terms, the application for admission did not require Powers to disclose any uncharged crimes, and St. John's Law School could not cite Powers's failure to disclose that he would "sometimes sell drugs to others" as a misrepresentation or omission in his application for admission (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052; *see generally Matter of Claudia E. v Ryan*, 61 AD3d 865, 865-866 [2009]; *Matter of D'Alessandro v West Hempstead Fire Dist.*, 53 AD3d 576, 577 [2008]).

Similarly, with respect to charged crimes, the application only sought disclosure of "the nature of the offense, the dates and courts involved, and the penalty imposed, if any." Nothing in the application required Powers to take a position as to whether he was actually guilty of charges that were later dropped or of which he was later acquitted. The fact that four deans of St. John's Law School were able to elicit such information from Powers at a subsequent meeting does not render his failure to provide such information in his application a misrepresentation or omission. Accordingly, to the extent that the determination of St. John's Law School was premised upon Powers's failure to disclose information that was not requested in the application for admission, it was arbitrary and capricious (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052; *see generally Matter of Claudia E. v Ryan*, 61 AD3d at 865-866; *Matter of D'Alessandro v West Hempstead Fire Dist.*, 53 AD3d at 577).

In support of its determination, St. John's Law School additionally cited Powers's failure to disclose that he had originally been charged with distribution of a controlled dangerous substance. In this regard, it is undisputed that Powers adequately disclosed that he had been arrested in connection with a drug sale, and that he subsequently pleaded guilty, pursuant to a plea agreement, to possession of a controlled dangerous substance in the third degree, in violation of NJ Stat Ann § 2C:35-10 (a) (1). St. John's Law School nevertheless contends that Powers's response gave it "the distinct impression that his arrest related to his purchase of drugs for his own personal use, not to sell or distribute to others." Since the application for

admission asked whether Powers had "ever been charged with . . . any crime, offense, or violation," and since Powers's response did not clearly indicate that he had been charged with distribution of a controlled dangerous substance, this aspect of the determination by St. John's Law School—that Powers failed to adequately disclose all of the crimes with which he had been charged—cannot be deemed arbitrary and capricious under the deferential standard applied in the context of these proceedings. However, since the determination of St. John's Law School was based, at least in part, upon the impermissible grounds cited above, the determination must be annulled and the matter remitted to St. John's Law School for a new determination without regard to those impermissible grounds (*see Matter of Fairchild Corp. v Boardman*, 56 AD3d 778, 779-780 [2008]).

Assuming that Powers's failure to disclose that he had been charged with a distribution offense constituted an omission under the terms of the application, St. John's Law School deviated from the terms of its application when it rescinded Powers's admission after he had been admitted to the school and after he had successfully completed three semesters of course work. The application for admission set forth the penalties to be imposed for failing to adequately disclose requested information: "the failure to provide truthful answers to any of the application questions . . . may result in denial of admission, dismissal, or rescission of an awarded degree from St. John's University of Law." The three penalties reflect remedies pertaining to students at various stages of their academic careers: those who were not yet admitted, those who were admitted and who were working towards a degree, and those who had already completed their studies and obtained a degree. As an admitted student in the midst of his studies, the appropriate remedy for Powers's omission, if any, would have been dismissal. Instead, St. John's Law School decided to impose a much more serious penalty, one that was not set forth in the application, the rescission of an admitted student's admission.

Unlike the penalties set forth in the application, the penalty of rescission, as that term is commonly defined, would retroactively undo Powers's admission and void his entire academic existence at St. John's Law School. Nothing in the application indicated that St. John's Law School would be permitted to retroactively deny a student admission and thereby take away credits that had already been earned. Nevertheless, St. John's Law School takes the position that, in light of its determination, Powers was, in effect, never a student at its institution. Presumably, the credits that he had concededly earned are now

void and not subject to transfer to another school. Although such a penalty would appear to entitle Powers to reimbursement for any tuition and expenses incurred as a result of his admission, there is no indication in the record that he was ever so reimbursed or otherwise put back into the position he was in prior to his admission. The failure of St. John's Law School to impose a penalty in accordance with the terms of its application for admission, and its decision to impose an undisclosed punishment that goes far beyond those that were set forth, is arbitrary and capricious and in violation of St. John's Law School's own established policy and procedure, as set forth in the application for admission (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052; *cf. Matter of Mitchell v New York Med. Coll.*, 208 AD2d 929, 930 [1994]). Accordingly, it cannot be upheld.

Furthermore, it has been recognized that judicial review of an administrative determination may be impossible where the administrative determination employs vague and conclusory language (*see Matter of Vaello v Parole Bd. Div. of State of N.Y.*, 48 AD3d 1018, 1019-1020 [2008]; *Matter of Prout v Dennison*, 26 AD3d 540, 541 [2006]). Accordingly, to the extent that the language of the determination stating that Powers's admission was "rescinded" has a meaning other than the meaning commonly applied to that term, the impact of the determination is vague and uncertain. Accordingly, to the extent that the punishment imposed by St. John's Law School is unknown, this Court cannot perform its duty to assess whether the punishment constituted an abuse of discretion (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d at 232). In other words, this Court cannot assess whether the penalty imposed "was so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" (*id.* at 233 [internal quotation marks omitted]), unless it can determine the nature of the penalty imposed. Under such circumstances, the determination cannot be upheld.

Quite apart from the terms of the application itself, Powers also maintains that St. John's Law School failed to apply its own grievance procedures, as set forth in its student handbook. As a general matter, Powers is correct in asserting that St. John's Law School was required to act in accordance with its own rules and guidelines (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052).

St. John's Law School issued a student handbook to Powers, and his application indicated that its terms were made binding

upon him upon his admission. The handbook stated that "[h]igh standards of integrity, honesty and candor are required not only in the formal course setting . . . but also in all law school and University relationships and interactions." The handbook set forth grievance procedures which were to be applied "to conduct or acts of a student who . . . is charged with a violation of th[e] Code [of student responsibility.]" The procedures entitle a student to notice of the alleged violation and a hearing before a committee composed of representatives of the student body, the faculty, and the administration.

St. John's Law School contends that it was not required to afford Powers the procedural protections afforded by the student handbook since his alleged omission relates to conduct which occurred before he was a student such that it does not constitute "conduct or acts of a student." In support of its contention, St. John's Law School relies on *Matter of Mitchell v New York Med. Coll.* (208 AD2d at 930). In that case, this Court concluded that a student was not entitled to a formal hearing, as provided in a student handbook, since the misrepresentations committed by the student occurred prior to his admission to the school (*id.*). However, in that case "the settled policy and practice of the school [was] to summarily dismiss any student who engage[d] in such misrepresentations" (*id.*).

Here, the record reveals that St. John's Law School does not summarily dismiss any student who makes a misrepresentation or omission on his or her application for admission. Rather, the Assistant Dean for Students-Designate affirmed that "whenever a student advises the Law School that there was an omission or misstatement on their Law School application, I direct the individual to provide a written request to amend or supplement his or her application, along with the new or corrected information and the reason why it was not disclosed at the time of application. This does occur frequently, and is most prevalent when students take their professional responsibility classes. In fact, on average, I meet with approximately three to five students per week who wish to amend their applications." The record demonstrates that, in all but two cases, students were permitted to amend or supplement their applications for admission. Moreover, students were routinely permitted to amend or supplement their applications to include criminal convictions involving alcohol or controlled substances.

The record thus reflects that students sought to amend their applications almost as a matter of course in connection with their professional responsibility classes. Moreover, the decision to permit students to amend or supplement their applications

involved consideration of submissions and explanations set forth by the students while they were students. The decision of St. John's Law School to incorporate this procedure into the curriculum and to consider conduct undertaken after the students had been admitted, makes this case distinguishable from the situation in *Matter of Mitchell v New York Med. Coll.* (208 AD2d at 930), and renders the provisions of the student handbook applicable to any punishment imposed for a student's failure to adequately request leave to amend their applications pursuant to the de facto procedure established by St. John's Law School (*compare id.* at 930). Accordingly, Powers was entitled to the benefit of a hearing and the other procedural safeguards afforded to the students of St. John's Law School. Since Powers was not afforded these procedural protections, the determination to rescind his admission must be annulled for this reason, in addition to the reasons previously delineated (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052).

The revelation that every week, three to five students successfully seek permission to amend or supplement their applications for admission so as to disclose, among other things, criminal convictions, further indicates arbitrariness in the determination of St. John's Law School. While St. John's Law School routinely permitted other students to remedy deficiencies in their initial application through amendments or supplements, and actually invited Powers to submit additional materials, St. John's Law School effectively ignored the supplemental materials that Powers provided and stated that its determination to rescind Powers's admission was based on his failure to provide truthful answers in his application. To the extent that St. John's Law School effectively ignored the supplemental information that Powers provided and punished him based on the finding that he did not fully and truthfully provide the requested disclosure, its determination was arbitrary and capricious since it routinely permitted other students to remedy deficiencies in their initial application through amendments or supplements and gave no explanation for its disparate treatment of Powers (*see generally Knight v Amelkin*, 68 NY2d 975, 977 [1986]; *Matter of Bout v Zoning Bd. of Appeals of Town of Oyster Bay*, 71 AD3d 1014, 1015 [2010]; *Matter of Corona Realty Holdings, LLC v Town of N. Hempstead*, 32 AD3d 393 [2006]).

Only after its determination was challenged in court did St. John's Law School seek to distinguish Powers's situation from those of the multitude of other students permitted to remedy deficiencies in their initial application through amendments or

supplements. In this regard it sought to rely on an unwritten policy which appeared nowhere in either the application for admission or the student handbook. In this regard, the Assistant Dean for Students-Designate affirmed that, "as an institution, the Law School does not admit applicants whose history includes a criminal record for drug dealing." However, this rationale for distinguishing Powers's application from those of other students who failed to disclose criminal convictions is unavailing. St. John's Law School's policy, as it is presented in the record, only pertains to students whose criminal history includes the distribution of drugs. Powers, however, does not have any such criminal history. The only omission made in his application pertained to a criminal *charge* of distributing a controlled dangerous substance. There is nothing in the record to indicate that St. John's Law School categorically denies admission to any student who has ever been *accused* of distributing controlled substances. Such a policy would, in all likelihood, be arbitrary and capricious since it would be based solely on accusation rather than fact (*accord Matter of Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770 [2001]). Furthermore, to the extent that St. John's Law School relied upon subsequent statements elicited from Powers indicating that he actually committed crimes other than the one he was convicted of, as previously indicated, such disclosures were not required by the application and, thus, cannot constitute an omission. Accordingly, the policy of St. John's Law School to deny admission to applicants with a criminal history of dealing drugs is inapplicable to the facts of this case, and cannot serve to justify the disparate punishment received by Powers (*see generally Knight v Amelkin*, 68 NY2d at 977; *Matter of Bout v Zoning Bd. of Appeals of Town of Oyster Bay*, 71 AD3d at 1015; *Matter of Corona Realty Holdings, LLC v Town of N. Hempstead*, 32 AD3d 393 [2006]).

In sum, it has been recognized that an implied contract exists between a student and an institution of higher education (*see Matter of Rizvi v New York Coll. of Osteopathic Medicine of N.Y. Inst. of Tech.*, 98 AD3d at 1052). "The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students" (*Matter of Olsson v Board of Higher Educ. of City of N.Y.*, 49 NY2d at 414).

Here, St. John's Law School violated its own procedures and did not deal fairly with Powers when, in rescinding his admission and retroactively voiding three semesters of course work, it imposed a sanction far beyond those set forth in the application or the student handbook. Although Powers's omission may have

warranted a punishment, the determination to impose the penalty here was arbitrary and capricious and in violation of lawful procedure. Accordingly, Powers's petition to review the determination of St. John's Law School, dated September 10, 2010, which rescinded his admission to St. John's Law School, should have been granted, and the determination should have been annulled.